## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

ROBERT N. CAPPIELLO,                    )
                                        )
                Plaintiff,              )        **08 2417**
                                        )
v.                                      )   Case No.: _____
                                        )
                                        )        **SPATT, J.**
ICD PUBLICATIONS, INC.                  )        **BOYLE, M.J.**
                                        )
and                                     )        **FILED**
                                        )   IN CLERK'S OFFICE
DAVID PALCEK,                           )   U.S. DISTRICT COURT E.D.N.Y
                                        )
                                        )   ★   JUN 17 2008   ★
                Defendants.             )   BROOKLYN OFFICE

### NOTICE OF REMOVAL

Defendants ICD Publications, Inc. and David Palcek. (collectively, "Defendants"), pursuant to 28 U.S.C. §§ 1441, 1446(a) and 1332, and Local Rule 81.1, hereby remove to this Court the civil action captioned *Cappiello v. ICD Publications, Inc.*, Case No. 008385/08, currently pending in the Supreme Court of the State of New York, County of Nassau (the "State Court Action"). In support of this Notice, Defendants state as follows:

1.      On or about May 6, 2008, Plaintiff Robert N. Cappiello ("Plaintiff") filed this State Court Action against Defendants, alleging breach of contract and tortious interference with contract.

2.      On or about May 28, 2008, Defendants were served with the Summons and Complaint in the State Court Action, copies of which are attached hereto as Exhibit A. Such service represented the first time that Defendants received a copy or notice of the State Court Action. Thus, this Notice is timely pursuant to 28 U.S.C. § 1446.

3.     Defendants have not yet filed an answer or other responsive pleading in the State Court Action, nor have any other proceedings occurred.

4.     Pursuant to 28 U.S.C. § 1332(a), this Court has original jurisdiction over the State Court Action, in that it is a civil action between citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.

5.     As alleged in the Complaint, Plaintiff is a citizen of the State of New York. (Complaint ¶ 1.)

6.     Defendant ICD Publications, Inc. is a citizen of the State of Illinois, in that it is incorporated in Illinois, its executive and administrative functions reside in Illinois, and it has its principal place of business in Illinois.

7.     Defendant Palcek is a citizen of the State of Illinois.

8.     While Defendants deny that Plaintiff is entitled to any damages, Plaintiff seeks compensatory damages of $800,000 and punitive damages – well exceeding the jurisdictional amount of $75,000, exclusive of interest and costs.  (Complaint at p.5.)

9.     Therefore, as demonstrated by Plaintiff's Complaint, this Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) and Defendants may remove this matter to federal court pursuant to 28 U.S.C. § 1441(a).

10.     Venue is proper here because the United States District Court for the Eastern District of New York, is the district and division embracing the place where the State Court Action is pending, i.e., Nassau County, New York.

11.     In compliance with 28 U.S.C. § 1446(d), a copy of this Notice is being filed with the Clerk of the Supreme Court of the State of New York, Nassau County.

2

WHEREFORE, NOTICE IS HEREBY GIVEN that this matter is removed from the Supreme Court of the State of New York, Nassau County, to the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1441.

Dated: June 17, 2008

Respectfully submitted,

ICD PUBLICATIONS, INC. and DAVID PALCEK

By: _____

Jonathan J. Faust
Katten Muchin Rosenman LLP
525 Madison Avenue
New York, New York 10022
(212) 940-8800
jonathan.faust@kattenlaw.com
JJF-2037

Attorney for Defendants

**Of counsel** (*pro hac vice* motions to be filed)
Julie L. Gottshall
Jenny R. Leifer
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, IL 60661
(312)902-5200
julie.gottshall@kattenlaw.com
jenny.leifer@kattenlaw.com

Attorneys for Defendants

EXHIBIT

A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
ROBERT N. CAPPIELLO,

                                      **Plaintiff,**

           -against-

ICD PUBLICATIONS, INC. and
DAVID PALCEK,

                                   **Defendants.**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Summons and Complaint
Filed: *5/6/08*

Index No. *008385/08*

Plaintiff designates Nassau
County as the place of trial

The basis of the venue is place of
plaintiff's residence.

**SUMMONS**

Plaintiff resides at
171 Duck Pond Drive
Wantagh, NY 11793

County of Nassau

TO THE ABOVE NAMED DEFENDANT:

       **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:  Garden City, New York
          April 28, 2008

                             WEINSTEIN, KAPLAN & COHEN, P.C.
                             Attorneys for Plaintiff

                             By:_____
                             ROBERT N. COHEN
                             1325 Franklin Avenue
                             Suite 210
                             Garden City, New York 11530
                             (516) 877-2525

Defendant's Address:
   45 Research Way
   Setauket, NY 11733

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

ROBERT N. CAPPIELLO,

          Plaintiff,     <u>VERIFIED COMPLAINT</u>

                 Index No. *00838508*

   - against -

ICD PUBLICATIONS, INC. and
DAVID PALCEK,

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

     Plaintiff, ROBERT N. CAPPIELLO, by his attorneys, WEINSTEIN, KAPLAN &
COHEN, P.C., complaining of the defendants, respectfully alleges as follows:

<u>AS AND FOR A FIRST CAUSE OF ACTION</u>

     1.   That at all times hereinafter mentioned, plaintiff was and remains a resident
of the State of New York, County of Nassau, residing at 171 Duck Pond Drive, Wantagh,
New York 11793.

     2.   That upon information and belief, at all times hereinafter mentioned,
defendant, ICD PUBLICATIONS, INC. (hereinafter referred to as "ICD"), is and was a
corporation duly organized and existing under and by virtue of the laws of the State of
Illinois and is duly engaged in business in the State of New York with offices located at
45 Research Way, Setauket, New York 11733.

     3.   Upon information and belief, at all times hereinafter mentioned, defendant,
DAVID PALCEK (hereinafter referred to as "PALCEK") was and still is the President
and Chief Executive Officer of ICD.

     4.   That heretofore and on or about the 11th day of June, 2007, plaintiff and
defendant ICD entered into an Agreement in writing, a true copy of which is annexed as

Exhibit "1", wherein and whereby the defendant ICD employed plaintiff as a "Vice President, Conferences and Special Events," for a term of three (3) years ending June 1, 2010 and agreed to pay him for such services the sum of Two Hundred Ten Thousand and 00/100 ($210,000.00) Dollars per annum, plus commissions based upon performance at a schedule to be determined upon the employment commencement date, and that plaintiff agreed to perform those services for that period of three (3) years and for that compensation.

5.    That the Employment Contract between the parties specifically provided that it was the intent of the defendant ICD to design a commission program that would reach Sixty Thousand and 00/100 ($60,000.00) Dollars annually, based on performance of the employee and achieving additional net sales for the company.

6.    In addition to the salary and compensations due to the plaintiff under the employment contract, the plaintiff is entitled to health insurance and disability insurance as outlined in the ICD Employment Handbook and also was to receive reimbursement for reasonable business expenses incurred on company business.

7.    That under the Employment Contract herein, the defendant ICD reserved its right to terminate plaintiff's employment for "cause" which term was defined in the Agreement to mean "the commission of a felony or a crime involving moral turpitude or the commission of any other act involving dishonesty, disloyalty or fraud with respect to the Company."

8.    That it was represented to plaintiff by the defendant ICD, in writing, that defendant ICD was to initiate and set up a new Trade Show and Conference Division for which plaintiff would be responsible for establishing the infrastructure of same and also reaching out to existing trade show companies to achieve joint venture agreements.

2

9.     That on and after the date of the employment agreement, June 11, 2007, defendants, ICD and PALCEK, breached the Employment Agreement herein by substantially changing the terms and conditions of plaintiff's employment by not setting up the Trade Show and Conference Division as had originally been represented.

10.     That on or after June 11, 2007, plaintiff entered upon the performance of the Employment Agreement and duly performed all of the conditions of the Agreement on his part until he was prevented from doing so by the acts of the defendants hereinafter alleged.

11.     On or about January 31, 2008, the defendants, ICD and PALCEK, without just cause, breached the contract on their part and discharged the plaintiff from his performance thereunder and refused to permit him to continue with the performance of the Employment Agreement.

12.     That the defendants, ICD and PALCEK, terminated the plaintiff solely because they had determined that they were not going to initiate a new Trade Show and Conference Division and, therefore, plaintiff became a highly paid employee for which they had no use.

13.     That the alleged grounds stated by the defendants for plaintiff's termination for "cause" were merely a pretext for defendants' desire to avoid plaintiff's salary, commissions and benefits and had no basis in fact.

14.     That plaintiff has been at all times ready, willing and able to perform the Employment Agreement on his part, but that defendants have wrongfully and illegally prevented plaintiff from so performing it.

15.     That by reason of the facts hereinbefore alleged, plaintiff has sustained damage in the sum of approximately Eight Hundred Thousand and 00/100 ($800,000.00)

3

Dollars or such sum as to be determined at a trial of this matter.

## AS AND FOR A SECOND CAUSE OF ACTION

16.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "15 ", inclusive, of plaintiff's Verified Complaint, with the same force and effect as though each were fully set forth herein at length.

17.    On or about January 31, 2008, defendant ICD wrongfully, wilfully and maliciously terminated plaintiff's employment and refused to pay him all sums due under the balance of his employment contract at the direction and inducement of defendant PALCEK.

18.    Upon information and belief, at all times hereinafter mentioned, defendant PALCEK was a principal shareholder of defendant ICD, and personally benefitted from the breach of the employment contract which he induced.

19.    That defendant PALCEK had actual knowledge of the existence of the Employment Agreement between plaintiff and defendant ICD, and intentionally and knowingly and without reasonable justification or excuse, tampered and interred with the contractual relationship between plaintiff and defendant ICD and induced defendant ICD to breach the employment contract with plaintiff.

20.    Defendant PALCEK was and still is the President and Chief Executive Officer of defendant ICD.

21.    That the action of defendant PALCEK was for his personal profit.

22.    That the acts of defendant PALCEK were taken outside the scope of his employment.

23.    Defendant PALCEK committed independent tortious acts in that he individually induced defendant to breach its employment contract with plaintiff.

4

24.    That defendant PALCEK was seeking to personally profit from inducing the breach of the employment contract with plaintiff.

25.    As a result, defendant PALCEK is personally liable to plaintiff and plaintiff is entitled to receive the sum of at least Eight Hundred Thousand and 00/100 ($800,000.00) Dollars from defendant PALCEK for his actions.

26.    The plaintiff further demands exemplary and punitive damages against defendant PALCEK in an amount to be decided by this Court.

WHEREFORE, plaintiff demands judgment against defendants as follows:

1.    On the First Cause of Action against defendant ICD in the sum of at least Eight Hundred Thousand and 00/100 ($800,000.00) Dollars or an amount to be determined by a trial court, plus interest thereon from January 31, 2008;

2.    On the second cause of action against defendant PALCEK in the sum of at least Eight Hundred Thousand and 00/100 ($800,000.00) Dollars or an amount to be determined by a trial court, plus interest thereon from January 31, 2008, plus exemplary and punitive damages in an amount to be determined by this Court;

3.    Plus such other and further relief as to the Court seems just and proper under the premises, together with interest, costs and disbursements.

Dated: Garden City, New York
       April 29, 2008

Yours, etc.

WEINSTEIN, KAPLAN & COHEN P.C.
Attorneys for Plaintiff

By: _____
       ROBERT N. COHEN
       1325 Franklin Avenue
       Suite 210
       Garden City, New York 11530
       (515) 877-2525

5

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

ROBERT N. CAPPIELLO,

                                    Plaintiff,              **VERIFICATION**

        - against -                              Index No. _008 385/08_

ICD PUBLICATIONS, INC. and
DAVID PALCEK,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

STATE OF NEW YORK)
                                    SS.:
COUNTY OF NASSAU )

        ROBERT N. CAPPIELLO, being duly sworn, deposes and says:

        I am the plaintiff in the within action; I have read the foregoing Verified
Complaint and know the contents thereof; the same is true to my own knowledge, except
as to the matters therein stated to be alleged on information and belief, and as to those
matters I believe it to be true.

                                    ROBERT N. CAPPIELLO

Sworn to before me this

    5TH day of May, 2008.

    NOTARY PUBLIC

                              BERTRAM J. SCHWARTZ
                         NOTARY PUBLIC, STATE OF NEW YORK
                              ID No. 01SCH835702
                          QUALIFIED IN NASSAU COUNTY
                         MY COMMISSION EXPIRES 12/31/20__

MAY-28-2008  05:25PM   FROM-ICD PUBLICATIONS               +16312469498        T-159  P.009/015  F-748

# EMPLOYMENT AGREEMENT

EMPLOYMENT AGREEMENT (this 'Agreement') is made as of ~~May~~ June 11, 2007, between ICD Publications, Inc., an Illinois corporation (the 'Company'), and Robert Cappiello ("Employee"). Certain capitalized terms utilized herein are defined below.

In consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

Employment. The company shall employ Employee, and Employee accepts employment with the Company, upon the terms and conditions set forth in this Agreement for the period beginning on the date hereof and ending as provided below ('Employment Period').

Position and Duties, During the Employment Period, Employee shall serve as Vice President, Conferences and Special Events, and shall render such sales, marketing and other services to the company as the Company's President may from time to time direct. Employee shall devote Employee's best efforts and Employee's full business time and attention (except for permitted vacation periods, leaves of absences, and periods of illness or other incapacity) to the business and affairs of the Company, and Employee shall report to the President.

Salary, Commissions and Benefits. During the Employment Period, Employee's base salary shall be Two Hundred and Ten Thousand Dollars ($210,000) per annum (the "Salary"), which salary shall be payable in regular installments in accordance with the Company's general payroll practices.

Employee shall be entitled to commissions (the 'Commissions") based on performance, at a schedule to be determined upon the starting date (above). However, it is the intent of the Employer to design a commission program which will reach $60,000 annually, based on performance of the Employee in achieving additional net sales for the Company.

In addition to the Salary and Commissions payable to Employee, Employee shall be entitled to the following benefits:

Health insurance and disability insurance as outlined in the ICD Employee Handbook. Insurance is subject to employee contributions and to starting dates as per Company policy. Also outlined in the ICD Employee Handbook are benefits including, but not limited to, sick days, personal days, vacation days, etc. The first 90 days of employment shall be considered probationary, with no health insurance provided in the initial 90 days.

Employee shall also receive reimbursement for reasonable business expenses incurred on Company business. In addition, Employee shall receive all other benefits provided by the Company as outlined by the ICD Employee handbook, including participation in ICD's retirement program, as detailed in the program summary.

Term. This agreement will commence on or about June 11, 2007 (the "Commencement Date") and unless renewed by the mutual agreement of the Company and Employee, the Employment Period shall end June 1, 2010 (the "Expiration Date"). Notwithstanding the foregoing, the Employment period shall terminate prior to such date as follows: a) upon written notice of Employee's Resignation for Good Reason; b) Upon 30 days prior written notice of Employee's resignation without Good Reason; c) Upon Employee's death or permanent disability or incapacity (as determined by the Board in its good faith judgment), or; d) upon written notice by the Company that it is terminating the Employment Period for Cause.

If the Employment Period is terminated for Cause, the Company shall pay all Salary, Commissions and Benefits earned or accrued through such date. It shall pay Commissions (in arrears) in respect to Employee's sales collected in the 60 day period subsequent to such termination and such payment be made within one hundred twenty (120) days after such termination.

In the event of a termination, the Company shall have the option to continue to pay Employee's Salary for a one year (1) period in consideration for the covenants contained in paragraph titled, Confidential Information, Non-Compete, Non-Solicitation.

If there is a change of control, the Company shall not be responsible if the successor fails to assume or continue this agreement.

Inventions and Patents. Employee agrees that all innovations, improvements, developments, methods designs, analyses, drawings, reports, and all similar or related information which relates to the Company's actual or anticipated business, research and development or existing or future products and which are conceived, developed, or made by Employee, which employed by the Company ("Work Product") belong to the Company.

## Confidential Information, Non-Compete, Non-Solicitation

(a)     Employee acknowledges that, by virtue of Employee's employment with Company, Employee has had and will continue to have access to confidential and proprietary information, observations and data concerning the business or affairs of the Company ("Confidential Information"). Employee acknowledges that Company has expended considerable time and resources in the development of its Confidential Information, that Company takes reasonable measures to preserve the confidentiality of its Confidential Information, and that it would be possible for Employee to use such Confidential Information to benefit other individuals and entities. It is specifically understood by Employee that all Confidential Information is the sole property of Company. Therefore, Employee agrees that he shall not disclose to any unauthorized person or use for Employee's own account any Confidential Information without prior written consent of the Board of Directors of the Company (the "Board"), unless and to the extent that the aforementioned matters become generally known to and available for use by the public other than as a result of Employee's acts or omissions to act. Employee shall deliver to the Company at the termination of the Employment Period, or at any other time the Company may request, all memoranda, notes, plans, records, reports and other documents (and copies thereof) relating to the Confidential Information or the business of the Company which Employee may then possess or have under his or her control.

(b)     Employee acknowledges that in the course of Employee's employment with the Company Employee will become familiar with the Company's trade secrets and with other Confidential Information concerning the Company and that Employee's services will be of special, unique and extraordinary value to the Company. Therefore, Employee agrees that during the Employment Period and, if the Employment Period is terminated, for one year thereafter (the "Noncompete Period"), Employee shall not directly or indirectly own, manage control, participate in, consult with, render services for, or in any manner engage in any business competing, directly or indirectly, with the housewares or hospitality publishing business of the Company as such businesses exist or are in process on the date of the termination of Employee's employment, within any geographical area in which the Company engages or plans to engage in such businesses. Nothing herein shall prohibit Employee from being an owner of not more than 5% of the outstanding securities of any class of a corporation which is publicly traded, so long as Employee has no active participation in the business of such corporation.

(c)     During the Employment Period and the one year thereafter, Employee shall not (i) induce or attempt to induce any employee of the Company to leave the employ of the Company, or in any way interfere with the relationship between the Company and any employee thereof, or (ii) induce or attempt to induce any customer, supplier, licensee or other business relation of the Company with whom Employee had contact during Employee's employment with Company to cease doing business with the Company, or in any way interfere with the relationship between any such customer, supplier, licensee or business relation and the Company.

(d)    In the event that any of the provisions, covenants, or agreements in this Agreement are held to be in any respect an unreasonable restriction or are otherwise invalid, for whatsoever reason, then the court so holding shall reduce and is so authorized to reduce, the scope of the restriction and/or the period of time in which it operates, or the scope of activity to which it pertains or affect any other change to the full extent permitted by law to render any of the restrictions of this Agreement enforceable.

(e)    The parties hereto recognize that Company will suffer irreparable injury in the event of a breach of terms of this Agreement by Employee.  In the event of a breach of the terms of this Agreement, Company shall be entitled, in addition to any other remedies and damages available and without proof of monetary or immediate damage, to a temporary and/or permanent injunction, without bond, to restrain the violation of this Agreement by Employee or any Persons acting for or in concert with Employee.  Such remedy, however, shall be cumulative and nonexclusive and shall be in addition to any other remedy which the parties may have.

(f)    The parties agree that nothing in the Agreement shall be construed to limit or negate the common law of torts or trade secrets where it provides Company with broader protection than that provided herein.

**Employee Representations**.  Employee hereby represents and warrants to the Company that (i) the execution, delivery and performance of this Agreement by Employee does not and will not conflict with, breach, violate or cause a default under any contract, agreement, instrument, order, judgment or decree to which Employee is a party or by which he is bound, (ii) Employee is not a party to or bound by any employment agreement, noncompete agreement or confidentiality agreement with any other person or entity and (iii) upon the execution and delivery of this Agreement by the Company, this Agreement shall be the valid and binding obligation of Employee, enforceable in accordance with its terms.

**Definitions.**

"Cause" means the commission of a felony or a crime involving moral turpitude or the commission of any other act involving dishonesty, disloyalty or fraud with respect to the Company.

"Change in Control" means a sale, merger or other disposition pursuant to which the current shareholders of the Company, collectively, cease to own a majority of the common equity of the Company or the right to elect a majority of the directors of the Company.

"Good Reason" means (i) the alteration of Employee's duties hereunder, (ii) the intentional commission of acts by the Board or the President that prevent Employee from performing Employee's obligations hereunder in a satisfactory manner, (iii) the failure of the company to perform its obligations hereunder or (iv) a Change in Control of the Company.

Notices.  Any notice provided for in this Agreement shall be in writing and shall be either personally delivered, or mailed by first class mail, return receipt requested to the recipient at the address below indicated:

> Notice to Employee:
>
> Robert Cappiello
> 171 Duck Pond Drive
> Wantagh, New York   11793
>
> Notices to Company:
>
> ICD Publications, Inc.
> 45 Research Way, Suite 106
> East Setauket, NY  11733
> Attn: Ian Gittiltz

The address of any party hereto may be changed by a notice in writing given in accordance with the provisions hereof.

Severability.  Each of the terms and provisions of this Agreement is to be deemed severable in whole or in part and, if any term or provision or the application thereof in any circumstance should be invalid, illegal or unenforceable, the remaining terms and provisions or the application thereof to circumstances other than those as to which it is held invalid, illegal, or unenforceable, shall not be affected thereby and shall remain in full force and effect.

Entire Agreement.  Except as expressly set forth herein, this Agreement and the Stock Appreciation Rights Agreement constitutes the entire agreement of the parties hereto with respect to the subject matter hereof and supersedes any previous communications, representations or agreements, whether oral or written, with respect to the subject matter hereof.

Assignment.  This Agreement is personal to Employee and Employee's rights and obligations under this Agreement shall not be assigned or delegated by Employee. Company may assign its rights under this Agreement.

Headings.  The headings and captions contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

**Applicable Law.** All questions with respect to the construction of this Agreement and the rights and liabilities of the parties hereto shall be determined in accordance with the laws of the State of Illinois, without reference to its conflicts of laws provisions.

**Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall constitute one and the same instrument.

**Amendments.** This agreement may not be amended and the terms or covenants hereof of may not be waived, except by a written instrument executed by Company and Employee or, in the case of a waiver, by a written instrument executed by the party waiving compliance. The failure to enforce any of the provisions of this Agreement shall not be construed as a waiver of such provisions. Further, any express waiver by any party with respect to any breach of any provision hereunder by any other party shall not constitute a waiver of the other party's further or continuing breach of that provision or a waiver of such party's right to thereafter fully enforce each and every other provision of the Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day first above written.

COMPANY:                         EMPLOYEE:


ICD PUBLICATIONS, INC.


BY _____    _____
ITS _____