**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
ROBERT CAPPIELLO,

                Plaintiff,

        -against-
                                   **MEMORANDUM OF**
                                   **DECISION AND ORDER**
                                   08-CV-2417 (ADS)(ETB)

ICD PUBLICATIONS,

                Defendant.
-----------------------------------------------------------X

**APPEARANCES:**

**WEINSTEIN, KAPLAN, & COHEN, P.C.**
*Attorneys for Plaintiff*
1325 Franklin Avenue, Suite 210
Garden City, NY 11530
      By: Daniele D. Devoe, Esq.
          Robert N. Cohen, Esq., of Counsel

**CLAUSEN MILLER P.C.**
*Attorneys for Defendant*
One Chase Manhattan Plaza, 30th Floor
New York, NY 10005
      By:  Tyler J. Lory, Esq.
           Edward M. Tobin, Esq., of Counsel

**SPATT, District Judge.**

        This case arises from a contract dispute between Robert Cappiello, ("Cappiello" or "the Plaintiff") and his former employers, ICD Publications ("ICD") and David Palcek.  The instant dispute between the parties relates to whether post-judgment interest on the Court's August 20, 2010 judgment entered in favor of the Plaintiff as against ICD ("the Defendant") is calculated at the federal interest rate set forth in 28 U.S.C. § 1961 or the New York interest rate set forth in New York Civil Practice Law and Rules ("CPLR") § 5004.

        This issue comes before the Court by way of three motions by the Defendant.  The first is a motion pursuant to Federal Rule of Civil Procedure 60(b)(5) ("Rule 60(b)(5)") to relieve the

Defendant from the final judgment on the ground that its tender of the judgment—which was rejected by the Plaintiff based on the dispute over the applicable post-judgment interest rate—satisfied the judgment entered by this Court and the subsequent costs associated with the appeal. The second is a motion by the Defendant pursuant to Federal Rule of Civil Procedure 62(b)(4) ("Rule 62(b)(4)") to extend the stay of the execution of the judgment pending resolution of the Rule 60(b)(5) motion. Finally, the Defendant moves for injunctive relief based on the two prior motions.

For the reasons set forth below, the Court construes the Defendant's motion pursuant to Rule 60(b)(5) as a motion pursuant to Federal Rule of Civil Procedure 60(a) ("Rule 60(a)") to clarify that the Plaintiff is entitled to post-judgment interest at the federal interest rate, and grants the Defendant's motion. Because the Court grants the Defendant's motion pursuant to Rule 60(a), the Court denies both the Defendant's motion for a stay pursuant to Rule 62(b)(4), as well as the Defendant's motion for injunctive relief as moot.

## I. BACKGROUND

On April 28, 2008, the Plaintiff commenced this action in Nassau County Supreme Court (Index No. 8385/08) alleging breach of contract and tortious interference in an employment dispute. The defendants removed the action to the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1332(a). On August 19, 2010, following a six day bench trial, the Court ruled in the Plaintiff's favor on his breach of contract claim as against ICD and ordered that a judgment be entered in favor of the Plaintiff and against ICD in the amount $532,587.06 plus costs and pre-judgment interest. On August 20, 2010, judgment was entered against ICD in favor of the Plaintiff in the amount of $600,510.15, which included: (1) $532,587.06 in damages and (2) $67,923.09 in pre-judgment interest.

On September 16, 2010, ICD filed a Notice of Appeal to the Second Circuit Court of Appeals. Shortly thereafter, the Plaintiff sought to enforce the judgment by filing the Transcript of Judgment from the Clerk of this Court with the Suffolk County Supreme Court pursuant to 28 U.S.C. § 1962 and CPLR § 5018(b).

On November 10, 2010, after the Plaintiff docketed the judgment in state court, but before the Second Circuit ruled on its appeal, ICD made a motion pursuant to Federal Rule of Civil Procedure 62(d) for entry of an order approving a supersedeas bond and staying the execution of the judgment pending the appeal. The Court granted ICD's motion on December 2, 2010.

On January 23, 2012, the Second Circuit affirmed this Court's judgment in its entirety. Following the decision by the Second Circuit, ICD attempted to tender payment in the amount of $612,587.66. In addition to the judgment, this tender included: (1) $8,912 awarded in costs; (2) $809.23 awarded in appellate costs; and (3) $2,356.79 in post-judgment interest at a federal interest rate of 0.25%. The Plaintiff rejected ICD's tender on the ground that ICD was required to pay the New York State post-judgment interest rate of 9% set forth in CPLR § 5004, which would make the total amount owed $696,035.55 as of March 18, 2012.

Subsequently, the Plaintiff has allegedly sought to execute on the judgment in the amount of $696,035.55 by contacting the bonding company and ICD's bank. As a result, ICD filed the instant motions seeking an order pursuant to Rule 60(b)(5) that its tender satisfied the judgment, and a stay of execution pending the Court's ruling on the motion for satisfaction pursuant to Rule 62(b)(4). While these motions were pending, ICD filed an additional motion seeking expedited injunctive relief. The Plaintiff opposes ICD's motions on a number of grounds. First, the Plaintiff argues that, because ICD has only tendered payment, but not actually paid the judgment,

a motion for an order of satisfaction pursuant to Rule 60(b)(5) is procedurally improper. Next, the Plaintiff contends that the New York interest rate applies because this case was initially filed in state court and removed to federal court. Finally, the Plaintiff asserts that, where, as here, a party avails itself of the requisite state procedures for enforcing a judgment as permitted by 28 U.S.C. § 1962 and CPLR § 5018(b):  (1) this Court lacks subject matter jurisdiction to decide collateral issues related to the judgment; and (2) the enforcement state's interest rate governs the calculation of post-judgment interest.  The Court addresses each of these contentions below.

## II. DISCUSSION

### A.  Whether the Defendant's Motion is Procedurally Proper

The Defendant moves this Court pursuant to Federal Rule of Civil Procedure 60(b)(5) for an order stating that its tender of $612,587.66—which neither party disputes constituted the amount owed if the federal interest rate applied to the post-judgment interest—satisfied the judgment.  Although brought as a motion for relief from the judgment pursuant to Rule 60(b)(5), the Court finds that the Defendant's motion is more properly construed as a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(a).

Rule 60(a) provides that a court "may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record". Fed. R. Civ. P. 60(a).  "In recognition of this accommodation between the goal of finality and that of accurate reflection of the adjudication of rights" the Second Circuit has held that a Rule 60(a) motion may be granted "where the judgment has failed to include an amount of interest that the governing law requires to be automatically included in the judgment." In re Frigitemp Corp., 781 F.2d 324, 327 (2d Cir. 1986) (citing Lee v. Joseph E. Seagram & Sons, Inc., 592 F.2d 39, 41–42 (2d Cir. 1979); Goodman v. Heublein, Inc., 682 F.2d 44, 46 (2d Cir. 1982)).  Although

4

not explicitly stated in the judgment, neither party disputes that the Plaintiff was statutorily entitled to an award of post-judgment interest pursuant to 28 U.S.C. § 1961.

Furthermore, where, as here, a judgment includes an award of post-judgment interest, "but the rate is not specified, the court may specify, in response to a Rule 60(a) motion, the appropriate rate at any time".  McNickle v. Bankers Life & Cas. Co., 888 F.2d 678, 682 (10th Cir. 1989).  This is because the applicable post-judgment interest rate is an issue that is "wholly collateral to the judgment in the main cause of action" insofar as the "[a]ssessment of [the applicable post-judgment interest rate] does not involve reconsideration of any aspect of the decision on the merits".  Buchanan v. Stanships, Inc., 485 U.S. 265, 268–69, 108 S. Ct. 1130, 99 L. Ed. 2d 289 (1988); cf. Southern Indus. of Clover, Ltd. v. Hardick, No. 92-CV-5750, 1999 WL 76891, at *2 (S.D.N.Y. Feb. 8, 1999) ("As distinguished from postjudgment interest, prejudgment interest is normally considered to be an element of the judgment itself, viz., relief on the merits . . . .").  Accordingly, the Court's failure to provide for post-judgment interest and specify the governing interest rate constitutes a "mistake arising from oversight or omission", which the Court may clarify pursuant to Rule 60(a).

**B.  Whether the New York State Interest Rate Applies to Judgments in Diversity Cases Removed from State Court**

Pursuant to 28 U.S.C. § 1961, a party who prevails in federal court is entitled to post-judgment interest as a matter of right.  See 28 U.S.C. § 1961 (2000) ("Interest *shall* be allowed on any money judgment in a civil case recovered in a district court.") (emphasis added); see Lewis v. Whelan, 99 F.3d 542, 545 (2d Cir. 1996); Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd., 888 F.2d 260, 268–69 (2d Cir. 1989).  "Such interest shall be calculated from the date of entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the

5

calendar week preceding the date of the judgment." 28 U.S.C. § 1961. This interest is to be "computed daily to the date of payment." Id. § 1961(b).

The Second Circuit has expressly held that where, as here, the court's jurisdiction is premised on diversity, an award of pre-judgment interest is governed by state law, whereas an award of post-judgment interest is governed by "the federal post-judgment interest rate provided for in 28 U.S.C. § 1961". FCS Advisors, Inc. v. Fair Fin. Co., Inc., 605 F.3d 144, 147 (2d Cir. 2010) (citing Schipani v. McLeod, 541 F.3d 158, 164–65 (2d Cir. 2008); Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 102 (2d Cir. 2004)).

Nevertheless, the Plaintiff asserts, without citing any authority, that the interest rate set forth in § 1961 does not apply to judgments in diversity cases when the case was initially filed in state court and subsequently removed to federal court. This argument is belied by the plain language of the statute. Section 1961 explicitly states that the federal interest rate applies to "*any money judgment* in a civil case recovered in a district court". 28 U.S.C. § 1961(a) (emphasis added). Other than cases where the parties contractually agree in "clear, unambiguous and unequivocal" language that "a particular interest rate apply to judgments or judgment debts", the Second Circuit has repeatedly held that post-judgment interest in diversity cases should be calculated in accordance with § 1961. FCS Advisors, Inc., 605 F.3d at 148–49.

Moreover, § 1961 is not silent with respect to exemptions. As stated in the statute, § 1961 does not apply to a "judgment of any court with respect to any internal revenue tax case". Id. § 1961(c)(1). Accordingly, to the extent Congress sought to exempt from § 1961 judgments in diversity cases that were initially filed in state court, it could have done so. Thus, because the Second Circuit has held that post-judgment interest in diversity cases should be calculated in accordance with the federal rate in § 1961, and because the statute does not otherwise provide an

6

exemption for diversity cases initially filed in state court, the Court finds that initially filing this action in state court does not warrant the imposition of the state interest rate.

## C.  Whether Docketing the Federal Judgment in State Court for Enforcement Divests This Court of Jurisdiction or Requires the Imposition of the New York Interest Rate

### 1.  As to the Court's Jurisdiction to Decide the Applicable Interest Rate

In order to facilitate the execution of a federal judgment, Congress enacted 28 U.S.C. § 1962, which "provides for the creation of liens arising from federal court judgments against properties in the various states".  In re Sterling Die Casting Co., Inc., 126 B.R. 673, 675 (Bankr. E.D.N.Y. 1991).  Section 1962 states in relevant part:

> Every judgment rendered by a district court within a State shall be a lien on the property located in such State in the same manner, to the same extent and under the same conditions as a judgment of a court of general jurisdiction in such State, and shall cease to be a lien in the same manner and time. . . . Whenever the law of any State requires a judgment of a State court to be registered, recorded, docketed or indexed, or any other act to be done, in a particular manner, or in a certain office or county or parish before such lien attaches, such requirements shall apply only if the law of such State authorizes the judgment of a court of the United States to be registered, recorded, docketed, indexed or otherwise conformed to rules and requirements relating to judgments of the courts of the State.

28 U.S.C. § 1962.

In New York, the applicable state guidelines regarding the docketing of liens are set forth in CPLR § 5018(b), which provides:

> A transcript of the judgment of a court of the United States rendered or filed within the state may be filed in the office of the clerk of any county and upon such filing the clerk shall docket the judgment in the same manner and with the same effect as a judgment entered in the supreme court within the county.

N.Y. C.P.L.R. § 5018(b).  As previously stated, the Plaintiff in this case availed himself of this procedure by filing the federal judgment issued by this Court in the Suffolk County Supreme

7

Court.  As a result, the Plaintiff contends that, because the judgment has been docketed in state court, this Court lacks jurisdiction to resolve the dispute.  The Court disagrees.

The fact that the Plaintiff has filed the judgment in state court does not strip this Court of jurisdiction "to take action with respect to some collateral matters related to the case." Covanta Onondaga Ltd. v. Onondaga Cnty. Res. Recovery Agency, 318 F.3d 392, 396 (2d Cir. 2003). "As a general rule, once a federal court has entered judgment, it has ancillary jurisdiction over subsequent proceedings necessary to 'vindicate its authority, and effectuate its decrees.'" Dulce v. Dulce, 233 F.3d 143, 146 (2d Cir. 2000) (quoting Peacock v. Thomas, 516 U.S. 349, 354, 116 S. Ct. 862, 133 L. Ed. 2d 817 (1996)).  Such authority includes proceedings to enforce the judgment rendered.  See Dulce, 233 F.3d at 146 (citation omitted).

The Plaintiff misconstrues the nature and effect of filing his federal judgment in a New York court pursuant to CPLR § 5018.  By docketing the judgment in New York state court, the Plaintiff did not convert the federal judgment into a state judgment for any other purpose other than enforcement.  "Under [28 U.S.C. § 1962] a federal judgment, upon being docketed with a clerk of a county of the state, becomes a judgment of a Supreme Court of the State of New York for purposes of *enforcement* in that county." Knapp v. McFarland, 462 F.2d 935, 938 (2d Cir. 1972), abrogated on other grounds by Keeton v. Hustler Magazine, Inc., 815 F.2d 857, 859–60 (2d Cir. 1987) (emphasis added).

Although the combination of § 1962 and CPLR § 5018(b) permitted the Plaintiff to enforce the federal judgment in New York state court, docketing the judgment did not constitute the commencement of a separate action.  See N.Y. C.P.L.R. 8018(a)(2) ("The filing of a transcript of judgment in the county clerk's office is not to be deemed an action pending in the supreme or county court of the county in which it is filed, nor does it constitute the

8

commencement of an action in such courts."); see also Allentown Dev. Co., Inc. v. Gans, No. 95-CV-4931, 1995 WL 489477, at *3 (S.D.N.Y. Aug. 16, 1995) (holding that, pursuant to CPLR § 8018(a)(2), the court did not lack subject matter jurisdiction to review a federal judgment docketed in New York state court under CPLR § 5018(b) because "the filing of a judgment with the New York County Clerk is not the institution of litigation, and the mere docketing of a judgment with the New York Supreme Court is not judicial action; rather, it is a ministerial act"); Federal Deposit Ins. Corp. v. Richman, 98 A.D.2d 790, 791, 470 N.Y.S.2d 19, 21 (2d Dep't 1983) ("[P]ursuant to [CPLR § 5018], the Federal judgment does not become a judgment of the Supreme Court [because] '[t]here has been no judicial action in the Supreme Court and no judgment has been, in fact, entered'" (quoting Dieffenbach v. Roch, 67 Sickels 621, 112 N.Y. 621, 20 N.E. 560 (1889)).

Thus, a federal court judgment docketed in New York pursuant to CPLR § 5018 "is simply deemed a judgment of the supreme court for the purpose of its enforcement", and does not confer upon the state court jurisdiction over the parties, or the ability to alter the judgment in any manner. Richman, 98 A.D.2d at 791, 470 N.Y.S.2d at 21. For all purposes other than enforcement, the judgment must continue to be treated only as a judgment of the court that rendered it. See, e.g., Wood v. Ford, 78 A.D.2d 585, 585, 432 N.Y.S.2d 572, 572 (4th Dep't 1980) ("The fact that a transcript of the judgment had been filed with the County Clerk for enforcement purposes did not make it a County Court judgment. Thus, a motion to vacate the judgment must be made to the court that rendered it."). Indeed, to the extent that the Court's judgment was ambiguous as to the applicable post-judgment interest rate, a New York state court "is without jurisdiction to resolve the ambiguities in documents issued by a Federal court and

submitted to the County Clerk for docketing" pursuant to CPLR 5018(b). Beary v. White & Case, 162 A.D.2d 526, 528–29, 556 N.Y.S.2d 756, 758 (2d Dep't 1990).

Thus, the Court finds that, because the Plaintiff's act in availing itself of the procedures afforded by § 1962 and CPLR § 5018(b) did not convert the federal judgment into a state court judgment for any purpose other than enforcement, the Court has jurisdiction to rule on the applicable post-judgment interest rate governing the federal judgment.

**2. As to the Applicable Interest Rate**

As previously stated, it is well-settled that: (1) the federal interest rate applies to judgments awarded in diversity cases, and (2) docketing a federal judgment for enforcement in state court does not convert the federal judgment into a state court judgment for purposes other than enforcement. Nevertheless, the Plaintiff argues that, "…well-established New York State precedent dictates that New York State statutory interest applies to enforcement of a foreign judgment in New York that is properly docketed in New York State Supreme Court regardless of whether that judgment is one from a sister state or whether said judgment is one issued by a federal court." (See Pl.'s Opp. at 6–7). The Court disagrees.

As an initial matter, the Court finds that the purported "well-established New York State precedent" does not support the Plaintiff's position. First, the Plaintiff cites to Wells Fargo & Co. v. Davis, 105 N.Y. 670 (1887) where the New York Court of Appeals held that the applicable post-judgment interest on a foreign judgment awarded in a Utah state court was governed by the law of the state where the plaintiff sought to enforce the judgment—New York—rather than the state where it was rendered—Utah. However, because Wells Fargo involved the post-judgment interest rate applicable to a state court judgment registered in a New York court, the rule of law articulated in Wells Fargo is inapplicable to the instant case.

10

The other case cited by the Plaintiff, Hartman v. Morganstern, 28 A.D.3d 423, 814 N.Y.S. 2d 169 (2d Dep't 2006), is similarly distinguishable. In Hartman, the plaintiff alleged that the defendants—attorneys who represented the plaintiff in a civil case—"committed legal malpractice by failing to request that a lower Federal interest rate be applied to a Federal judgment docketed in the New York State Supreme Court". 28 A.D.3d at 425, 814 N.Y.S. 2d at 171. The Second Department reversed the lower court's denial of the defendants' motion to dismiss, holding that "the plaintiff has no cause of action to recover damages for legal malpractice as he cannot demonstrate that, but for the defendants' negligence, the Supreme Court would have applied the lower Federal interest rate on the judgment". Id. In so holding, the Hartman court reasoned that, "there is no case law or statute requiring a New York State court to apply the Federal interest rate as opposed to the higher New York State interest rate in this situation". Id.

The Plaintiff contends that Hartman holds that a party with a federal judgment that avails himself of the procedure set forth in CPLR § 5018(b) is entitled to post-judgment interest at the New York rate. In support of his interpretation of Hartman, the Plaintiff cites a statement by Professor David Siegel in the Practice Commentaries to CPLR § 5004. In this commentary, Professor Siegel addresses the Second Circuit's ruling in FCS Advisors, Inc. v. Fair Finance Co., 605 F.3d 144 (2d Cir. 2010), which held that in diversity cases where a contract includes a choice-of-law clause, the federal rate governs the post-judgment interest rate unless the parties agree to different rate in "clear, unambiguous and unequivocal language". Based on this holding, Professor Siegel advises practioners as follows:

> The lesson to parties in general is that if they want state law to govern post-judgment interest--if they are indeed thinking that specifically about their engagements--they should spell it out in the contract in capital letters and italics.

11

> The more immediate course for this plaintiff to follow, however, is to get a transcript of the judgment from the federal district court pursuant to CPLR 5018(b) and quickly file it in a county clerk's office--any--in New York, which converts the federal judgment into a judgment of the supreme court in New York and permits its enforcement as such. That should invoke Hartman v. Morganstern, 28 A.D.3d 423, 814 N.Y.S.2d 169 (2d Dep't 2006) . . . which holds that the New York interest rate, not the federal interest rate, applies to a federal judgment so transcripted under CPLR 5018(b).

Siegel, Supplementary Practice Commentaries 2010, CPLR § 5004. The Court respectfully disagrees with Professor Siegel's interpretation of the holding in Hartman.

Contrary to Professor Siegel's interpretation, Hartman does not speak directly to the issue before this Court, namely, whether the New York or federal interest rate applies to post-judgment interest on a federal judgment docketed in state court under CPLR § 5018(b). Rather, Hartman stands for the proposition that, under the circumstances and facts in that particular case, the failure to seek the federal interest rate did not constitute a failure "to exercise the care, skill, and diligence commonly possessed and exercised by a member of the legal profession". Id. Although the Court takes no position on whether the failure to seek the lower federal interest rate constituted legal malpractice, the Court finds that, as set forth below, any holding that the Plaintiff can alter the applicable post-judgment interest rate by docketing a federal judgment in state court pursuant to § 1962 and CPLR § 5018(b) would run counter to the plain language of the relevant statutes and binding precedent.

The Plaintiff's entitlement to post-judgment interest is premised on § 1961, and, as the United States Supreme Court held in Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 110 S. Ct. 1570, 108 L. Ed. 2d 842 (1990), "the most logical reading of [§ 1961] is that the interest rate for any particular judgment is to be determined as of the date of the judgment, and that is the single rate applicable for the duration of the interest accrual period." 494 U.S. at 838–39, 110 S. Ct. 1570. Consequently, regardless of whether it was explicitly stated in the

judgment, the amount of post-interest judgment was set at the federal rate at the time the judgment was entered, and subsequent actions by the Plaintiff cannot subject the Defendant to a higher interest rate.

Furthermore, to allow a plaintiff to alter the applicable interest rate during the pendency of an appeal or while awaiting payment would frustrate the purpose of the statute and alter the incentives to appeal. As the Court further explained in Kaiser Aluminum, the purpose of fixing the applicable post-judgment interest rate as of the date of the entry of judgment is so that, "at the time judgment is entered, the parties are capable of calculating the value or cost of the interest throughout the time period during which the judgment remains unpaid. In other words, on the date of judgment expectations with respect to interest liability were fixed, so that the parties could make informed decisions about the cost and potential benefits of paying the judgment or seeking appeal." Id. at 839.

Finally, that the post-judgment interest rate on a federal money judgment cannot be altered in a state court enforcement proceeding is further supported by Federal Rule of Civil Procedure 69(a)(1). Rule 69 provides that the procedure of the state where the district court is located governs the enforcement of a federal money judgment, "but a federal statute governs to the extent it applies". Fed. R. Civ. P. 69(a)(1). As stated in the Advisory Committee Notes, § 1961 addressing "Interest on judgments", is among the "Statutes of the United States on execution" applicable to enforcement proceedings. Fed. R. Civ. P. 69(a)(1) advisory comm. nn.

"A federal statute that specifically governs execution preempts any state statute." Samba Enters., LLC v. iMesh, Inc., No. 06-CV-7660, 2009 WL 3364031, at * 2 (S.D.N.Y. Oct. 16, 2009) (citing Schneider v. Nat'l R.R. Passenger Corp., 72 F.3d 17 (2d Cir. 1995) ("Rule 69(a) adopts state procedures for execution only to the extent that they do not conflict with any

13

applicable 'statute of the United States.' This term includes the Federal Rules of Civil Procedure, since they have the force and effect of federal statutes.")).  If the Plaintiff sought to enforce the judgment in federal court pursuant to Rule 69, the Court, although following New York state enforcement procedures, would be bound to apply the federal interest rate.  Similarly, the Plaintiff cannot circumvent § 1961 and obtain a higher interest rate by docketing the federal judgment in state court.

### III. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that the Defendant's motion pursuant to Rule 60(b)(5) construed as a motion pursuant to Rule 60(a) is granted, and it is further

**ORDERED**, that the Defendant's motion pursuant to Rule 62(b)(4) for a stay of execution pending the outcome of the motion for relief from judgment is denied as moot, and it is further

**ORDERED**, that the Defendant's motion for injunctive relief is denied as moot, and it is further

**ORDERED**, that the Clerk of the Court is directed to correct the judgment to include that the Plaintiff is entitled to post-judgment interest to be calculated pursuant to the federal rate set forth in 28 U.S.C. § 1961.

**SO ORDERED.**
Dated: Central Islip, New York
June 7, 2012

                _/s/ Arthur D. Spatt_____
                  ARTHUR D. SPATT
                 United States District Judge