UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ROBERT N. CAPPIELLO,

                      Plaintiff,

       - against -

ICD PUBLICATIONS, INC.,

                      Defendant.
------------------------------------------------------------x

**MEMORANDUM OF
DECISION AND ORDER**
CV 08-02417 (ADS)

**A P P E A R A N C E S:**

     **WEINSTEIN, KAPLAN & COHEN, P.C.**
          Attorneys for Plaintiff
          1325 Franklin Avenue, Suite 210
          Garden City, NY 11530
     BY:   Danielé D. DeVoe, Esq.,
          Robert N. Cohen, Esq., of Counsel

     **CLAUSEN MILLER P.C.**
          Attorneys for Defendant
          One Chase Manhattan Plaza, 30th Floor
          New York, NY 10005
     BY:   Christopher T. Scanlon, Esq.,
          Jeffrey W. Varcadipane, Esq.,
          Don R. Sampen, Esq., of Counsel

**SPATT, District Judge.**

## I.  BACKGROUND

The history of this law suit has been set forth in prior decisions of the Court.  However, to

put this decision in proper context, some chronology must be reviewed.  The post bench trial

decision proceedings in this case have been long and torturous.

On April 28, 2009, the Plaintiff commenced this action alleging breach of contract and

1

tortious interference in an employment dispute. On August 19, 2010, following the bench trial, the Court ruled in the Plaintiff's favor on his breach of contract claim as against the Defendant ICD Publications, Inc. ("ICD" or the "Defendant"). The Court ordered that a judgment be entered in favor of the Plaintiff and against ICD in the amount of $532,587.06 plus costs and pre-judgment interest. On August 20, 2010, a judgment was entered against ICD in favor of the Plaintiff in the amount of $600,510.15, which included: (1) $532,587.06 in damages, and (2) $67,923.09 in pre-judgment interest.

On September 16, 2010, ICD filed a Notice of Appeal to the Court of Appeals for the Second Circuit. Shortly thereafter, the Plaintiff sought to enforce the judgment by filing the Transcript of Judgment from the Clerk of this Court with the Suffolk County Supreme Court, pursuant to 28 U.S.C. § 1962 and CPLR § 5018(b).

On November 10, 2010, after the Plaintiff docketed the judgment in state court, but before the Second Circuit ruled on its appeal, ICD made a motion, pursuant to Federal Rule of Civil Procedure 62(d), for entry of an order approving a supersedeas bond and staying the execution of the judgment pending the appeal. The Court granted ICD's motion on December 2, 2010.

On January 23, 2012, the Second Circuit affirmed this Court's judgment in its entirety. Following the decision by the Second Circuit, ICD attempted to tender payment in the amount of $612,587.66. In addition to the judgment, in the sum of $600,510.15, this tender included: (1) $8,912 awarded in costs; (2) $809.23 awarded in appellate costs; and (3) $2,356.79 in post-judgment interest at the federal interest rate of 0.25%. The Plaintiff rejected ICD's tender on the ground that ICD was required to pay the New York State post-judgment interest rate of 9% as set

forth in CPLR § 5004, which would make the total amount owed $696,035.55 as of March 18, 2012.

Subsequently, the Plaintiff allegedly sought to execute on its version of the judgment in the amount of $696,035.55 by contacting the bonding company and ICD's bank. As a result, ICD filed motions seeking an order pursuant to Rule 60(b)(5) that its tender of $612,587.66 satisfied the judgment, and also seeking a stay of execution pending the Court's ruling on the motion for satisfaction of the judgment pursuant to Rule 62(b)(4). While these motions were pending, ICD filed an additional motion seeking expedited injunctive relief.

In a decision dated June 7, 2012, the Court made the following determinations:

(1) By docketing this judgment in a New York State Court, the plaintiff did not convert this federal judgment into a New York State judgment for any purpose other than enforcement.

(2) Therefore, this federal court has jurisdiction to rule on the applicable post-judgment interest rate governing this federal judgment.

(3) The Second Circuit has held that the post-judgment interest rate in diversity cases, such as the present case, should be calculated at the federal interest rate of 0.25% and not the New York State post-judgment interest rate of 9%.

(4) The Clerk of the Court was directed to correct the judgment to include the fact that the plaintiff is entitled to post-judgment interest at the federal rate set forth in 28 U.S.C. § 1961.

(5) In view of the above rulings, the Defendant's motion for a stay and for injunctive relief were denied as moot.

## II.  THE CURRENT PENDING MOTIONS AND APPLICATIONS

**A.  The Motion by the Defendant for an Emergency Temporary Restraining Order;
a Hearing to Vacate Alleged Invalid Judgments, Executions and Levis; to Allocate
Poundage to the Plaintiff; and for a Satisfaction of Judgment**

On June 22, 2012, the Defendant ICD moved, by order to show cause, pursuant to Rule

60(b)(5), 62(b)(4) and 65(a) of the Federal Rules of Civil Procedure for "emergency injunctive

relief to temporarily restrain Plaintiff . . . from levying, executing or attacking IDC's assets in an

account in <u>excess</u> of the proper amount of the judgment, costs and interest . . . owed by ICD,"

pending a determination of this motion.  The Defendant's motion also requests an order vacating

any judgments entered by the Plaintiff that contain an award of post-judgment interest calculated

at the New York State interest rate of 9%.  In addition, the Defendant requests an order vacating

any notice of execution, levy or attachment issued by the Plaintiff, which contained a 9% post-

judgment interest award.  Further, if the Court vacates any invalid judgments or executions by

the Plaintiff, the Defendant requests counsel fees, costs or poundage.  Also, the Defendant

requests an order by this Court directing that the total judgment amount is $612,065.22, and that

the payment of this sum, within ten business days of the Court's order, would fully satisfy the

judgment in this case.  Finally, the Defendant requests that the Plaintiff comply with the requests

of the supersedeas bond company, International Fidelity Insurance Company, and the Defendant,

to effectuate the proper transfer of funds to the Plaintiff so as to satisfy the total judgment

amount, and, upon such payment, to discharge the surety.

In support of this application, the Defendant asserts that the Plaintiff and his attorneys

have levied on ICD's assets in amounts far in excess of the total judgment amount and have

restrained ICD's bank accounts based upon improper judgments and/or executions containing the

9% New York State interest rate for post-judgment interest, which contravenes this Court's June 7, 2012 order. In addition, and of serious consequences, the Defendant contends that the Plaintiff initiated "unnecessary and unwarranted enforcement proceedings commenced by the City Marshal at Plaintiff's insistence well after ICD had tendered an unconditional offer to pay the total judgment amount and despite the fact that the Plaintiff's judgment was secured by a Court-approved bond." (Dft's Affirmation at p. 3).

In sum, the Defendant contends that Plaintiff's counsel seeks to impose upon ICD "improper poundage in excess of $30,000 as a result of an invalid and unauthorized execution issued to the City Marshal on June 7, 2012." Again, says the Defendant, this notice of execution to the City Marshal claiming post-judgment interest at the 9% New York State interest rate was invalid and improper because: (1) the judgment was secured by a bond, and (2) ICD had previously issued an unconditional tender to satisfy the judgment, at the federal interest rate, which the Plaintiff refused to accept. Therefore, asserts the Defendant, the Plaintiff must bear the Marshal's fees, costs and expenses.

In opposition to this motion, the Plaintiff contends that he waited seventy-three (73) days after the judgment was entered and because the Defendant neither remitted payment, or posted a bond, his counsel proceeded to file the judgment in the Suffolk County Supreme Court and retain the Suffolk County Sheriff to levy on the Defendant's property. It was only after the Sheriff appeared at the ICD's principal office in Setauket, on or about November 10, 2010, that the Defendant finally filed a supersedeas bond.

On February 8, 2012, more than a month after the affirmance by the Second Circuit, the Defendant's counsel contacted the Plaintiff's counsel to discuss payment. However, there was a

disagreement as to the amount of post-judgment interest.  The Plaintiff's counsel further

contends that she advised Defendant's counsel that they would accept the Defendant's payment

of the undisputed amount, issue a satisfaction of the federal court judgment containing the federal

post-judgment interest rate, and then proceed to litigate as to the claimed 9% interest rate as

against ICD, by appeal to the Second Circuit.  Not having received payment or an agreement

from the Defendant or the bonding company, and with no stay in effect, the "plaintiff directed his

attorneys to proceed to execute on the judgment on or about March 2012 . . . plaintiff requested

that we direct the Suffolk County Sheriff to proceed with its execution and that we proceed with

a levy upon the defendant's bank accounts held with J.P. Morgan Chase."  (Affirmation in

Opposition at pp. 11-12).

      The Plaintiff further contends that even the offer made by the Defendant does not contain

interest "over the past four months," from February 28, 2012.

      Also, the Plaintiff opposes the additional requests by the Defendant in this motion, as

follows:

      (1)  There is no legal basis for the Court to direct the Plaintiff to produce a copy of all the

judgments filed in any venue, which are public records.

      (2)  The Plaintiff had a right to docket the federal court judgment in the State Court, and

this Court's June 7, 2012 order did not prohibit such action.  Also, the Clerk of the Docketing

Court applies the statutory interest of the jurisdiction in which it is located.

      (3)  Nothing in this Court's June 7, 2012 decision stated that it was improper for the

Plaintiff to execute on the judgment.  In any event, the Marshal was advised to apply the federal

and not the state interest rate.

(4)  As to the Marshal's fee, the Plaintiff contends that this Court never ruled that the Plaintiff could not docket the federal court judgment in State Court, especially when Defendant failed to pay for almost three months.  Also, there is no basis for the Court to order the Plaintiff, "the victim," or his attorney to "bear the defendant's burden of paying the Marshal's fee."  (Pltf's Affirmation in Opposition at p. 16).

(5)  Also, according to the Plaintiff, the Marshal will release his levy upon receipt of payment of the federal court judgment with all applicable accrued interest and his fee.  According to the Plaintiff's counsel, no order is necessary, as the Defendant or its bonding company "that is holding $700,000 of the Defendant's money, can simply remit payment to the Marshal so he will release the levy."  (Pltf's Affirmation in Opposition at p. 17).

(6)  The Plaintiff "cannot and will not issue a release herein as he, respectfully intends to appeal this Court's recent decision" as to the post-judgment interest rate (Pltf's Affirmation in Opposition at p. 17).  Further the Plaintiff contends that there is no authority for the issuance of a release.

In a second Affirmation in Opposition by Plaintiff's counsel Robert N. Cohen, he reiterated that the Plaintiff was willing to accept payment on the "Federal Judgment" containing the federal post-judgment interest rate.  However, the Plaintiff will only issue a satisfaction of the federal judgment, but not the State Court judgment.   The Plaintiff wishes to appeal this Court's ruling as to the post-judgment interest rate; and "proceed against ICD for the balance."  (Cohen Affirmation at p. 3).  The Cohen Affirmation further states that, "every single offer of payment made by defendant was conditioned upon the plaintiff satisfying both the New York State and Federal Court Judgments herein, in addition to issuing a release, which would force plaintiff to

waive his right of appeal." (Cohen Affirmation at p. 5).

### III. <u>THE HEARING</u>

In oral argument before the Court on June 28, 2012, the parties presented their respective positions. According to the Defendant's counsel, the issues that remained to be addressed were (1) the amount of post-judgment interest due and payable to the Plaintiff, and (2) to determine who was to pay the New York City Marshal's fees. The attorney for the Defendant stated that the full amount of the judgment and the post-judgment interest at the interest rate clarified by this Court's decision of June 7, 2012, was fully tendered to the Plaintiff as of March 7, 2012. Further, says defense counsel, the Plaintiff declined the tender and "proceeded with improper and unnecessary enforcement and execution proceedings which resulted in Marshal Henry Daly of the City of New York poundage fees in an amount of $30,000 approximately." (Hearing Transcript at p. 3).

In addition, defense counsel stated at the Hearing that ICD tendered to the Plaintiff the amount of $612,587.66, which included costs and post-judgment interest to March 5, 2012, and post-judgment interest at the rate of $4.18 per day for the two days to March 7, 2012. According to Defendant's counsel, Plaintiff's counsel refused that tender of payment on the ground that the New York State post-judgment interest rate of 9% was the proper post-judgment interest rate. So that it is ICD's position that the unqualified tender of payment terminated any obligation for further post-judgment interest or other fees – obviously including the Marshal's fee. In addition, the Defendant reminded the Court that in November 2010, a supesdeas bond was authorized by the Defendant and has remained in effect since that time. The bond is guaranteed by a restricted bank account of the Defendant ICD at the Chase Bank. Therefore, the Defendant contends that there has been a guarantee of payment for the full judgment amount and any interest and fees

since November 2010.

Notwithstanding this guarantee of judgment, the Defendant asserts that on June 7, 2012, the day this Court issued an order stating exactly what post-judgment interest rate was to be applied, namely the federal rate, Plaintiff's counsel issued an execution with notice to garnishee to Marshal Henry Daly "and set in motion the Marshal's proceedings to levy upon the assets of ICD." (Hearing Transcript at p. 8). Marshal Daly requires payment of a Marshal's fee of $30,675.18. The Defendant contends that this Marshal fee is unnecessary, an abuse of process and void at initio, because of this Court's decision of June 7, 2012. The execution issued on the same date as the Court's decision demands post-judgment interest at 9%, meaning per diem interest of $173.82 accruing per day, instead of the federal post-judgment interest rate of $4.18 per day.

In sum, the Defendant contends that the execution issued to Marshal Daly was void ab initio, meaning invalid on its face, as it was based on an improper judgment, rendered in violation of this Court's June 7, 2010 order; and must be vacated. In addition, the Defendant asserts that where an execution is invalidated or vacated, according to the terms of CPLR 8012, the Court may require the party liable for the unwanted execution to pay the Marshal's poundage. Therefore, the Defendant requests that the Court "allocate payment of the Marshal's poundage to the plaintiff . . .." (Hearing Transcript at p. 11).

In response, the Plaintiff's counsel asserts that the federal court judgment had to be docketed in the State Court in order to utilize state procedure to collect on the judgment. Questioned by the Court as to whether the federal judgment docketed in the State Court produced a second judgment or just a docketing of the federal judgment, Plaintiff's counsel declined to

directly answer this question.

In addition, Plaintiff's counsel contends that at the time the execution was sent to the Sheriff, the Court had not yet made the June 7, 2012 decision as to post-judgment interest; so that "we had a very good faith basis which we still have New York State law as the applicable interest." (Hearing Transcript at p. 13). In fact, Marshal Henry Daly was notified of the Court's decision and defense counsel provided the Court with an amended levy which reflected the federal post-judgment interest rate. Also, the Plaintiff contends that there has never been an unconditional tender of the judgment amount by the Defendant. Stated simply, the Plaintiff is willing to accept payment of the judgment and the post-judgment interest at the federal rate, but want to reserve the right to appeal as to the correct post-judgment interest rate; which it contends is the 9% New York State rate.

However, allegedly based on the advice of the Defendant's attorney, Clausen & Miller, the bonding company decided not to make the payment. Instead the bonding company decided to wait for the Court's subsequent decision. So that, the Plaintiff states that it will accept what sum is undisputed and will litigate the issue of the post-judgment interest rate. However, according to the Plaintiff, the Defendant has conditioned any offer of payment on receipt of a satisfaction of judgment and a general release, which would have effectively waived any right on the part of the Plaintiff to appeal the Court's decision on the post-judgment interest rate. "My client shouldn't have to waive his rights to appeal your Honor's decision in order to get paid." (Hearing Transcript at p. 21). Aa result of this standoff no money was paid on the judgment.

As to the current controversy, the Plaintiff contends that it is improper to allocate to the Plaintiff any payment to the Marshal. Again, in the Hearing before the Court on June 28, 2012,

the Plaintiff agreed to accept the amount due under the judgment; the pre-judgment interest; costs; the post-judgment interest under the federal rate; and, the Marshal's fee in the sum of $30,675.18. The Plaintiff will release everything except the right to appeal this Court's determination as to the post-judgment interest rate. As stated by the Court:

> THE COURT: I'm not getting into the - - what she says now - - let me repeat it again. Her client will accept the amount of the judgment as far as the substantive amount of the judgment, plus costs, pre judgment interest which is not disputed, and post judgment interest to today at the rate that I have set, the federal rate plus the Marshal's fee and what is that?
>
> MS. DE VOE: It is - -
>
> MR. SCANLON: $30,675.18.
>
> MS. DE VOE: Marshal's amended levy is H as in Harry.
>
> THE COURT: You have now got that offer by her to accept all of this and that will be a release of everything under the sun against your client, any kind of action claim, attorney's fees, interest, judgment or anything else and only the post judgment interest rate will be the appeal, that's it. That's what she is now offering.
>
> MR. SCANLON: Understood. Because it includes the Marshal's fee, that is not acceptable to my client.

(Hearing Transcript at p. 28).

The Court then recommended that the Defendant pay the full amount of the judgment; the pre-judgment interest; costs; the post-judgment interest to date at the rate fixed by the Court; and also deposit the sum of the Marshal's fee in an escrow account, subject to the Court's decision as to who should pay the Marshal's fee.

This arrangement was agreed to by both counsel and by Defendant David Palcek, the Defendant's President and CEO, on the record in open Court.

With regard to payment for the Marshal's fee, the Defendant contends that, pursuant to

CPLR 8012, upon vacating of an invalid and improper execution, any expenses, costs, poundage

or fees levied by the Marshal must be borne by the party at whose insistence the Marshal was

engaged – in this case by the Plaintiff and his counsel.  Here, the Defendant asserts that on March

7, 2012, an unqualified tender of the full amount with interest was made to Plaintiff's counsel,

and the Plaintiff's counsel declined to accept the payment.  Therefore, according to the

Defendant the execution issued to Marshal Daly was "wholly unwarranted and wholly

unnecessary . . . (and) invalid . . . the execution which set the Marshal in motion was invalid

from the start because it was based on an improper judgment amount."  (Hearing Transcript at p.

36).

In response, Plaintiff's counsel contends that the Defendant never made an unconditional

tender.  The tender was always conditioned on the Plaintiff giving the Defendant a release and

satisfaction and giving up his rights to the New York State 9% post-judgment interest rate.

At the conclusion of the Hearing, the Court stated:

"Decision reserved on that issue.  (The Marshal's Fee).  . . . Its all over except the
Marshal's fee, (and the) post-judgment interest amount, appeal, if there is going to
be an appeal.

MR. SCANLON:        Yes.

MS. DE VOE:          Yes."

(Hearing Transcript at p. 39).

## IV.  THE STIPULATION OF SETTLEMENT

Shortly after the Hearing on the same date, June 28, 2012, a "So Ordered Stipulation of

Settlement" was entered with by the parties agreeing to the following:

(1) Defendant stipulates and agrees to remit payment to plaintiff for the principal judgment of $600,510.15, which is inclusive of pre-judgment interest through August 20, 2010, the trial costs of $8,912.00, the appellate costs of $276.17, and the post-judgment interest at the federal rate through June 25, 2012 of $2,821.50, for a total sum of $612,520.44.

(2) Plaintiff agrees that the foregoing amount will be reduced to reflect the $341,575.33 that Marshal Henry Daley has collected as a result of his levy upon Defendant's checking account held with JP Morgan Chase, leaving a balance due of $270,945.11.

(3) Plaintiff further acknowledges receiving a business check for the sum of $270,945.11 from Defendant by hand-delivery after oral argument was heard on June 28, 2012.

(4) Defendant further stipulates and agrees to deposit a check for the sum of $30,675.18 with the Clerk of the Court representing Marshal Henry Daly's fee herein and that said money shall remain with the Clerk of the Court until this Court issues a Decision with regard to who is responsible therefore.

(5) Plaintiff stipulates and agrees that, upon clearance of the sum set forth in Paragraph 3 herein above, he will immediately withdraw all levies, executions and restraints issued in this action and issue a partial satisfaction of judgment with regard to any and all judgments filed herein acknowledging that $612,520.44 in principal, costs and federal court interest has been paid towards said aforementioned judgments.

(6) Plaintiff further stipulates and agrees that, upon clearance of the sum set forth in Paragraph 3 herein above, he will execute a General Release, releasing the Defendant and International Fidelity Insurance Company from all claims and causes of actions except that said release shall specifically exclude Plaintiff's dispute (a) as it pertains to who is responsible for the

Marshal's fee and (b) with regard to Plaintiff's appeal of this Court's June 7, 2012 Memorandum of Decision and Order regarding the appropriate post-judgment interest rate that he believes should have been applied herein.

(7)  The parties stipulate and agree that the temporary stay imposed by the foregoing Order to Show Cause as it pertains to the Marshal's retention of the $341,575.33 check it collected by levying upon Defendant's JP Morgan Chase checking account is hereby lifted, and that Marshal Daley shall promptly forward the aforementioned sum to "Weinstein, Kaplan & Cohen, PC., as attorneys" for the Plaintiff.

(8)  The parties further stipulate and agree that all issues in this matter except as set forth in Paragraph 6 herein have been resolved by virtue of the foregoing So Ordered Stipulation of Settlement other than the issue of who shall pay the Marshal's fee which shall be resolved by Decision of this Court.

Thereafter, on July 10, 2012, the Court signed an order directing that a check in the sum of $30,675.18, representing the fee of Marshal Henry Daley be deposited with the Clerk of the Court by the Defendant to be held in an interest bearing escrow account, pending a resolution by the Court as to who shall be responsible for this fee.

## V.  THE PRESENT CONTROVERSY

By Affirmation dated August 9, 2012, the Defendant moved by Order to Show Cause for the following relief:

(1)  To hold the Plaintiff and his counsel in contempt for willfully and intentionally violating this Court's June 28, 2012 Order approving the parties' Stipulation of Settlement.

(2)  Pursuant to Rule 60(b)(5) directing the Plaintiff to cause to be filed a Satisfaction of Judgment reflecting payment by the Defendant of the sum of $612,520.44 in principal, costs and

federal court interest.

(3) Pursuant to Rule 60(b)(5) deeming the judgment satisfied, in its entirety; and

(4) Discharging and releasing the supersedeas bond issued by IFIC as surety.

In support of their requests, the Defendant relates that, pursuant to this Court's recommendation at the June 28, 2012 Hearing, the Defendant paid the entire judgment plus post-judgment interest at the federal rate and costs, which was the sum of $612,520.44. In addition, the Defendant deposited with the Clerk of the Court, the sum of $30,675.18, representing the Marshal's fee, in anticipation of the Court deciding which party, Cappiello or ICD, was responsible for the Marshal's fee.

In addition, the parties agreed to the entry of a "So Ordered Stipulation of Settlement," in which the Plaintiff agreed to "immediately" issue a partial satisfaction of judgment, upon issuance of the payments made by ICD at issue here. The Defendant contends that although ICD's payment was made on that same date, June 28, 2012, and cleared shortly thereafter, the "Plaintiff refuses to issue its satisfaction in accordance with the stipulation." (Affirmation in Support at p. 4). Also, the Defendant contends it made demands to Plaintiff's counsel for the satisfaction but none has been provided, as of the date of the Affirmation, August 9, 2012. As a result, according to ICD, because of the Plaintiff's continued refusal to issue a satisfaction of judgment, "ICD continues to incur damages as a result of IFIC's inability to lift the supersedeas bond, which continues to constrain IDC's access to funds that were posted to serve the bond." (Affirmation in Support at p. 4). Further, the Defendant contends that, pursuant to the terms of CPLR 5020(a), the Plaintiff was required to file with the Judgment Clerk a satisfaction indicating the payment by ICD. As a result, Defendant requests that sanctions for contempt are not only warranted but are clearly necessary.

15

In opposition to this latest motion by the Defendant ICD, counsel for the Plaintiff reviewed all the prior proceedings in this case. This included conversations with an attorney in another law firm who indicated that she represented ICD, which sequence allegedly caused a delay by Plaintiff's counsel in enforcing the judgment. In sum, after reviewing the numerous factual incidents, Plaintiff's counsel stated that when the sums paid cleared their bank on August 9, 2012, "The Partial Satisfaction of Judgment was filed with this Court at approximately 12:34 pm." (Affirmation in Opposition at p. 20). Thus, Plaintiff's counsel requests that this motion be deemed as moot. Annexed to the Plaintiff's papers is the "Partial Satisfaction of Judgment." In this Partial Satisfaction of Judgment, it is stated that the judgment "has been partially satisfied and the sum of $99,058.93 with per diem interest incurring at the rate of $24.43 per day from every day after June 28, 2012 remains unpaid which is the subject of an appeal currently pending before United States Court of Appeals in and for the Second Circuit." The words "partial satisfaction" are stated three times and emphasized in darker ink.

Apparently this "Partial Satisfaction of Judgment" was filed by the Plaintiff, "hours after the submission of ICD's motion . . .." (Supplemental Affirmation in Further Support at p. 1). In its Supplemental Affirmation dated August 9, 2012, the Defendant objects to the responsive filing of the "Partial Satisfaction of Judgment." In addition, the Defendant contends that this filing "is an implicit readmission of their wrongdoing" and, at the very least, "the Court should award ICD costs and fees associated with the filing of the motion as a sanction against Plaintiff for its admitted wrongdoing." (Supplemental Affirmation at pp. 1 and 2).

In addition, the Defendant contends that the term "Partial Satisfaction of Judgment" is improper because the judgment, costs and applicable federal interest have been fully satisfied by

ICD, and there is no amount due under the judgment that remains unpaid. Stated simply, the

Plaintiff contends that there is no amount unpaid under the terms of the judgment and no

obligation for ICD to pay post-judgment interest at the State Court rate, so that all the amounts

due under the judgment, namely, the sum of $612,520.44 inclusive of interest and costs, has been

paid and fully satisfied.

Therefore, ICD requests that the Court issue an order, as follows:

(I)     Holding Plaintiff, and his counsel, in contempt of Court for willfully and intentionally violating the Court's June 28, 2012 order and issuing the appropriate sanctions therefore;

(ii)     Pursuant to Rule 60(b)(5), directing Plaintiff to cause to be filed, a satisfaction of judgment reflecting the payment of $612,520.44 in principal, costs and federal court interest has been paid;

(iii)     Pursuant to Rule 60(b)(5), deeming the judgment satisfied it its entirety;

(iv)     Discharging and releasing the supersedeas bond and IFIC as surety;

(v)     Allow such further relief as may be necessary or appropriate.

In the Plaintiff's Affirmation in Response to the Defendant's Supplemental Affirmation,

dated August 15, 2012, the Plaintiff's counsel contend that they did not receive the final payment

from the Marshal until August 6, 2012, "or that said funds were not confirmed as cleared until

August 9, 2012. As such, Plaintiff's filing of the Partial Satisfaction of Judgment on August 9,

2012 complied with the requirements of the FRCP" (at p. 2). Further, the Plaintiff asserts that

the filing of a "Partial Satisfaction of Judgment" is expressly provided for in paragraph 5 of the

So Ordered Stipulation of Settlement.

Finally, in regard to this motion by the Defendant to hold the Plaintiff and his counsel in

contempt of court, and for other relief, the Defendant asserts that the bonding company declined to release the bond and the letter of credit "unless a release naming both Defendant ICD and IFIC is provided or IFIC is presented with a Court Order requiring release of the bond." (Reply Affirmation at p. 7). Neither the release provided by Plaintiff's counsel nor a satisfaction of judgment which does not acknowledge satisfaction of the full amount of the judgment will allow IFIC to release the bond or the letter of credit. The Defendant contends that the "belatedly filed purported Partial Satisfaction of Judgment is wholly improper because it sets forth that '$99,058.93 with per diem interest accruing at a rate of $24.43 per day for every day after June 28, 2012 remains unpaid.'" The Defendant contends that no such amount remains "unpaid". Also, the purported partial satisfaction does not acknowledge the fact that the sum of $612,520.44 in principal, costs and federal court interest had already been paid. Consequently, the Defendant requests that the Plaintiff be required to issue a proper satisfaction of judgment for the entire amount of the judgment that has been paid, namely, the sum of $612,520.44. Because of all these alleged improper actions on the part of the Plaintiff and his counsel, the Defendant requests that they be held in contempt and the Court issue an order in conformity with the five requests set forth above.

## VI. <u>DISCUSSION</u>

### A. <u>The Judgment</u>

Notwithstanding the lengthy motion papers by both sides on these post-judgment issues, in the Court's view, the Court's ruling can be brief and to the point. On June 7, 2012, the Court issued a Memorandum of Decision and Order in which it decided that the Plaintiff is entitled to post-judgment interest to be calculated at the federal rate set forth in U.S.C. § 1961, and not the

greater New York State post-judgment interest rate of 9% set forth in CPLR § 5004. The attorneys for the Plaintiff disagree and state the Plaintiff wishes to appeal from this ruling. That is their prerogative. However, in the absence of a stay by the Second Circuit, this Court's ruling is the present law of the case.

As such, upon payment of the amount of the federal judgment plus costs and post-judgment interest to the date of payment, the Defendant is entitled to receive a satisfaction of the federal judgment. The Court perceives no authority for the issuance of a "partial" satisfaction of judgment. The federal judgment containing the federal post-judgment interest rate has been fully paid and the satisfaction should so declare.

Of course, the Plaintiff has a right to appeal from the Court's decision as to the rate of post-judgment interest, and the judgment can so declare. Therefore, the Plaintiff is directed to file a satisfaction of judgment in conformity with this Order within five (5) days of the date of this Order.

## B.  <u>As to the Marshal's Fee</u>

By the terms of 28 U.S.C. § 1920, "A judge or clerk of any court of the United States may tax as costs the following: (1) Fees of the clerk and marshal." Rule 54 of the Federal Rules of Civil Procedure provides, in pertinent part:

> "Unless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party."

Pursuant to this Rule, the district court, has some discretion in awarding costs. Generally, the prevailing party – in this case the Plaintiff – would be entitled to costs. <u>See</u> <u>Japan Airlines Co. v. Port Authority of N.Y. & N.J.</u>, 178 F.3d 103, 114 (2d Cir. 1999).

19

The Rule provides that costs should be "allowed to the prevailing party" unless a Court Order provides otherwise. There is no doubt that the Plaintiff exercised some patience in awaiting payment. However, the filing of a judgment containing the New York rate of post-judgment interest on the very day the Court decided otherwise, does not appear to be a mere coincidence. The Plaintiff has pressed his version of the post-judgment interest rate too hard and fast. While he has an absolute right to appeal from the Court ruling, he must accept the ruling until it is reversed. Any judgment filed prior to any reversal must conform to this Court's ruling. This rule was violated by the Plaintiff.

In addition, the Court finds that following the affirmance by the Second Circuit, the defendant ICD tendered the total judgment amount in the sum of $612,597.66. This sum consisted of (1) the award by this Court in the sum of $532,597.06, (2) $67,923.09 in pre-judgment interest, (3) $8,912 in costs in this Court, (4) $809.23 in appellate costs, and (5) $2,256.79 in post-judgment interest at the federal interest rate. This offer of the judgment in full, was rejected by the Plaintiff on the ground that ICD was required to pay the New York State post-judgment interest rate of 9%.

Thereafter, on June 7, 2012, the very day the Court issued its decision on the rate of post-judgment interest, the Plaintiff issued an execution to the City Marshal. This notice of execution claimed post-judgment interest at the 9% New York State interest rate. This was done even though the Defendant had moved and on December 2, 2010 had been granted an order which approved the procurement of a supersedeas bond that stayed the execution of the judgment pending appeal.

In a case such as this, where the judgment debtor tendered the amount necessary to satisfy

the existing judgment, this attempt by the Plaintiff to obtain intervention by the Marshal was invalid and ineffective. In <u>Randock Construction Services, Inc. v. Kaatsbaan International Dance Center Inc.</u>, 54 A.D.2d 924, 864 N.Y.S.2d 127, 129 (2d Dept. 2008); aff'd 13 N.Y.3d 580, 896 N.Y.S.2d 278, 923 N.E.2d 561 (2009), it was held that the judgment debtors tender of the full amount of the judgment, terminates the Sheriff's authority and discharges the execution lien.

> When the judgment debtor tenders the amount necessary to satisfy the judgment, the execution lien is discharged (<u>see</u> <u>Tiffany v. Saint John</u>, 65 N.Y. 314) . . . the tender was made here, in the proper amount and form, prior to the commencement of biding at the judicial auction and sale. Under such circumstances, the "instantaneous effect" of that tender is to discharge the execution lien, thereby terminating the Sheriff's authority to sell the property (<u>see</u> <u>Tiffany v. Saint John</u>, 65 N.Y. at 318). "Where the act [of a party conducting a judicial sale] is unauthorized and property rights of a party in interest are injured, the act must be repudiated." (<u>Mullins v. Franz</u>, 162 App.Div. 316, 318, 147 N.Y.S. 418; <u>see</u> <u>Greenwood Packing Profit Sharing Plan Trust v. Fournier</u>, 181 A.D.2d 861, 862, 581 N.Y.S.2d 413).

> Also, in <u>Co. of West v. Richers</u>, 6 Misc. 3d 584, 785 N.Y.S.2d 892 (Sup. Ct. 2004), it

was held that the party liable to the Sheriff is the one who hired the Sheriff.

Finally, under the provisions of CPLR 8012, where an order of attachment is vacated or set aside after levy, the Sheriff is entitled to poundage. However, by the express terms of the statute, "the court may order the party at whose insistence the order of attachment was granted to pay the same to the Sheriff." Here, the order of attachment presented to the Marshal was in violation of this Court's order as to post-judgment interest and was inoperative and ineffective. Therefore, under the express provision of CPLR 8012, the party at whose instance the order was made – namely, the Plaintiff – should pay the Sheriff's fee and/or poundage.

In this particular case, after reviewing all of the statutes, rules and cases, the Court finds that the Plaintiff should pay the Marshal's fee or poundage. Counsel for the Plaintiff's conduct

in precipitously filing a judgment with the incorrect post-judgment interest on the very day this Court decided otherwise is another valid reason for this equitable, fair and just result.

The actions by the attorneys for the Plaintiff in this case were, at the least, overly aggressive and unnecessary. First, instead of going to the bonding company, which was available, the Plaintiff went to the Marshal. Second, either at the same time or just prior to the Court's ruling on the post-judgment interest, the Plaintiff issued a judgment at the state rate, apparently to execute at the state rate.

In this ruling, the Court has reviewed a somewhat similar case. In the <u>Matter of Associated Food Store, Inc. v. Farmer's Bazaar of Long Island, Inc.</u>, 126 Misc. 2d 541, 483 N.Y.S.2d 581, 583 (Sup. Ct. Nassau Co. 1984), it was held:

> Thus, as here, where an execution has been vacated the Sheriff is entitled to his statutory poundage where, at the direction of the creditors and/or their attorneys, he levied execution on the designated property. To hold otherwise would permit the creditors, in this instance, to escape the statutory obligation calling for the payment of poundage after the aid of the Sheriff had been invoked and his services properly rendered.

> Therefore, the judgment-creditor-respondents are responsible for, and shall pay the Sheriff's poundage in this case.

> Accordingly, the Court makes the following final rulings in this case:

(1) The motion by the Defendant to hold the Plaintiff and his counsel in contempt of court, is denied.

(2) If not done already, the attorney for the Plaintiff is directed to serve and file a satisfaction of judgment reflecting the payments made on principal, the judgment interest costs and federal rate post-judgment interest, which satisfaction can state the right of the Plaintiff to appeal from: (a) the post-judgment interest rate, and (b) payment of Marshal's fee by the

22

Plaintiff.

(3) If not done already, the supersedeas bond is discharged and the surety IFIC is also discharged and released.

(4) The Marshal's fee is to be paid by the Plaintiff.

## VII. <u>CONCLUSION</u>

As stated above, payment of the Marshal's fee in the sum of $30,675.18, is to be paid by the Plaintiff. The Defendant has paid the Marshal's fee in the sum of $30,675.18, which fee is in the Clerk's interest bearing account. The Plaintiff is directed to pay to the Defendant, by its counsel, the Marshal's fee in the sum of $30,675.18 within five (5) days of the date of this Order.

The Clerk of the Court is directed to remit to Marshal Henry Daley, the fee held in a Court account in the sum of $30,675.18 within five (5) days of the date of this Order.


**SO ORDERED.**


Dated:  Central Islip, New York
        November 2, 2012


                    _____*/s/ Arthur D. Spatt*_____
                         ARTHUR D. SPATT
                     United States District Judge