**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
ROBERT N. CAPPIELLO,

                Plaintiff,

           -against-

ICD PUBLICATIONS, INC. and DAVID
PALCEK,

                Defendants.
-------------------------------------------------------X

                              **MEMORANDUM OF**
                              **DECISION AND ORDER**
                              08-CV-2417 (ADS)(ETB)

<u>**APPEARANCES:**</u>

**Weinstein, Kaplan & Cohen, P.C.**
*Attorney for the plaintiff*
1325 Franklin Avenue, Suite 210
Garden City, NY 11530
    By:  Danielé D. DeVoe., Esq.
        Robert N. Cohen, Esq., of Counsel

**Clausen Miller P.C.**
*Attorney for the defendants*
One Chase Manhattan Plaza
30th Floor
New York, NY 10005
    By:  Christopher T. Scanlon, Esq.
        Jeffery W. Varcadipane, Esq.
        Don R. Sampen, Esq., of Counsel

**SPATT, District Judge**.

        This case arises from a contract dispute between Robert Cappiello, ("the Plaintiff") and

his former employer, ICD Publications ("ICD") and David Palcek (collectively, "the

Defendants").  The present dispute between the parties relates to this Court's November 2, 2012

decision in which it directed the Plaintiff to pay the Marshal's fee.  The Plaintiff now moves for

"renewal, reargument and reconsideration" of this decision.  In this motion, the Plaintiff also

requests that the Court "deem the partial satisfaction filed by the Plaintiff sufficient under the

circumstances." For the reasons set forth below, the Court denies the Plaintiff's motion. However, the Court, in issuing this order, will clarify those portions of its previous decision that may have mischaracterized the actions of the Plaintiff and his counsel.

## I.  BACKGROUND

In reaching its November 2, 2012 decision, the Court has reviewed the voluminous submissions from the parties in this case and arrived at the pertinent facts that follow.

On April 28, 2008, the Plaintiff commenced this action against the Defendants in Nassau County Supreme Court alleging breach of contract and tortious interference in an employment dispute. The Defendants removed the action to the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1332(a). On August 19, 2010, following a six day bench trial, the Court ruled in the Plaintiff's favor on his breach of contract claim as against ICD and ordered that a judgment be entered in favor of the Plaintiff and against ICD in the amount $532,587.06 plus costs and pre-judgment interest. On August 20, 2010, a judgment was entered against ICD in favor of the Plaintiff in the amount of $600,510.15, which included: (1) $532,587.06 in damages and (2) $67,923.09 in pre-judgment interest.

On September 16, 2010, ICD filed a Notice of Appeal to the Second Circuit Court of Appeals. Shortly thereafter, on November 1, 2010, the Plaintiff sought to enforce the judgment by filing the Transcript of Judgment from the Clerk of this Court with the Suffolk County Supreme Court pursuant to 28 U.S.C. § 1962 and CPLR § 5018(b). On November 2, 2010, the Plaintiff sought to enforce the judgment by serving a property execution upon the Suffolk County Sheriff's Office to levy upon ICD's assets located at its principal place of business in East Setauket.

2

On November 10, 2010, ICD made a motion pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.")  62(d) for entry of an order approving a supersedeas bond and staying the execution of the judgment pending the appeal.  The Court granted ICD's motion on December 2, 2010.

On January 23, 2012, the Second Circuit affirmed this Court's ruling in its entirety. Following the decision by the Second Circuit, on or about February 28, 2012, ICD submitted to the Plaintiff's counsel its calculation of the amount of the judgment together with all applicable post-judgment interest and costs awarded by both the District Court and the Court of Appeals, calculated pursuant to 28 U.S.C. § 1961.  The Plaintiff's counsel contested ICD's calculation, arguing that the Plaintiff was entitled to the New York State post-judgment interest at the rate of 9% set forth in CPLR § 5004.

On March 7, 2012, ICD attempted to tender payment in the amount of $612,587.66.  In addition to the judgment, this tender included: (1) $8,912 awarded in costs; (2) $809.23 awarded in appellate costs; and (3) $2,356.79 in post-judgment interest calculated under section 1961. The tender was secured by the supersedeas bond.  The Plaintiff rejected ICD's tender on the ground that ICD was required to calculate the post-judgment interest at the New York State rate of 9% under CPLR § 5004.

On that same date, March 7, 2012, ICD also filed a motion seeking an order pursuant to Fed. R. Civ. P. 60(b)(5) that its tender satisfied the judgment.  The motion was fully briefed on March 16, 2012.

Subsequently, on March 15, 2012, the Plaintiff contacted the bonding company via letter. In the letter, the Plaintiff represented to the bonding company that the amount of interest due should be calculated under the New York State post-judgment interest rate.  As a result, on April

3

18, 2012, ICD filed another motion seeking a stay of execution pending the Court's ruling on the motion for a satisfaction pursuant to Fed. R. Civ. P. 62(b)(4).  The motion was fully briefed on May 11, 2012.

On May 11, 2012, while ICD's motions were pending, the Plaintiff continued with enforcement proceedings under New York State law by serving an Information Subpoena with Restraining Notice on JP Morgan Chase Bank ("Chase").  On June 4, 2012, Chase mailed its response to the Plaintiff's Information Subpoena, which the Plaintiff received on June 7, 2012. About this time, on June 6, 2012, ICD filed an additional motion seeking emergency injunctive relief based on its previously filed motions on March 7, 2012 and April 18, 2012.

On June 7, 2012, the Plaintiff issued a property execution to the New York City Marshal containing the claimed post-judgment interest rate at the 9% New York State rate.  The property execution also demanded payment of more than $30,000 for the Marshal's fee.  On June 7, 2012, the Marshal placed a levy on ICD's Chase bank accounts.

On the same date, June 7, 2012, the Court issued a decision, in which it made the following determinations:

> (1) By docketing the judgment in a New York State court, the Plaintiff did not convert the federal judgment into a New York State judgment for any purpose other than enforcement.
> (2) As such, this Court had jurisdiction to rule on the applicable post-judgment interest rate governing the federal judgment.
> (3) The Second Circuit had previously held that the post-judgment interest rate in diversity cases, such as the present case, should be calculated at the federal interest rate of 0.25% and not the New York State post-judgment interest rate of 9%.
> (4) The Clerk of the Court was directed to correct the judgment to include the fact that the Plaintiff was entitled to post-judgment interest at the federal rate set forth in 28 U.S.C. § 1961.

4

     (5) In view of the above rulings, the Defendant's motions for a
        stay and for injunctive relief were denied as moot.

(Dkt. No. 98.)  An Amended Judgment reflecting this order was entered on the same date of the

decision, June 7, 2012.

     The Court's June 7, 2012 decision was issued on the same day that the Plaintiff's attorney

served the property execution upon the New York City Marshal, Henry Daley.  The property

execution requested that the Marshal proceed and execute on the Defendant's bank account with

Chase. The property execution sought post-judgment interest at the New York State rate of 9%.

In the Plaintiff's Memorandum of Law in Support of his motion for reconsideration, additional

details were offered regarding the service on the Marshal of the property execution on June 7,

2012, as follows:

> Moreover, there can be no dispute whatsoever that the
> **Property Execution in question was emailed** by Cheryl Joie, a
> secretary with plaintiff's attorney's firm, to New York City
> Marshal Henry Daley **at 12:47 P.M.** in the early afternoon, on
> June 7, 2012. (*Doc. 99, Exhibit 10*)  **There can similarly be no**
> **dispute that plaintiff's attorneys did not receive this Court's**
> **June 7, 2012 Memorandum of Decision and Order until 2:32**
> **P.M.—***or after* **it had already served the Property Execution—as**
> **the Clerk did not enter it and it was not emailed to the**
> **attorneys for the parties until 2:30 P.M.** . . .  Thus, it is
> respectfully submitted that, unless the undersigned is a psychic,
> which I submit that I am not, it was, in fact, a sheer and utter
> coincidence that your Honor issued the June 7, 2012 Decision later
> the same day that the plaintiff's attorneys sent a Property
> Execution to the New York City Marshal.

(Dkt. No. 118-1, pg. 8, emphasis in the original.)

     Accepting the Plaintiff's attorney's version of what occurred on June 7, 2012, it is

apparent that the Court's June 7, 2012 decision was received by the Plaintiff's counsel on the

same day but after the counsel had sent the property execution to the New York City Marshal.

After receiving the Court's decision, the Plaintiff emailed the Marshal and informed him to collect the post-judgment interest at the federal rate.  (Dkt. No. 99-11.)

On June 13, 2012, ICD, by email, proposed payment of the total judgment amount, and requested in return a satisfaction of the judgment.  (Dkt. No. 98-10.)  The Plaintiff's counsel responded on June 15, 2012, and notified ICD of the Marshal's levy.  She indicated that the Plaintiff intended to appeal this Court's June 7, 2012 ruling on the post-judgment interest rate. (Dkt. No. 98-12.)  On June 20, 2012, ICD attempted to tender the total judgment amount by offering to wire the funds in accordance with the Plaintiff's instructions or, alternatively, to provide a check for the total judgment amount.  The tender was rejected by the Plaintiff.

On June 22, 2012, ICD filed an order to show cause for a temporary restraining order pending determination of its motion to vacate invalid judgments, executions, levies or attachments and to allocate the Marshal's fee to the Plaintiff or his counsel.  This Court granted the order to show cause and directed the parties to appear on June 28, 2012.

At the June 28, 2012 hearing, the Court recommended that ICD pay the following sums: the full amount of the judgment; the pre-judgment interest; costs; and the post-judgment interest to date at the federal rate fixed by the Court.  The Court also recommended that ICD deposit the sum of the Marshal's fee in an escrow account, subject to the Court's decision as to who should pay the Marshal's fee.  On that same date, a "So Ordered Stipulation of Settlement" was entered into by the parties reflecting the Court's abovementioned recommendations.  Thereafter, on July 10, 2012, the Court signed an order directing that ICD deposit a check in the sum of $30,675.18 representing the Marshal's fee with the Clerk of the Court to be held in an interest bearing escrow account, pending a resolution by the Court as to who should be responsible for the fee.

On August 9, 2012, ICD moved by order to show cause for contempt and to compel the Plaintiff to issue a satisfaction of judgment pursuant to Fed. R. Civ. P. 60(b)(5).  Also on August 9, 2012, the Plaintiff filed a partial satisfaction of judgment.

By Decision and Order dated November 2, 2012, the Court made the following rulings:

> (1) denied ICD's motion to hold the Plaintiff and his counsel in contempt of court;
>
> (2) directed the Plaintiff, if he had not done so already, to serve and file a satisfaction of judgment reflecting the payments made on the principal, the judgment interest, costs and the federal rate post-judgment interest, which satisfaction could state the right of the Plaintiff to appeal from the post-judgment interest rate and payment of the Marshal's fee by the Plaintiff;
>
> (3) if not done already, discharged the supersedeas bond and discharged the surety IFIC;
>
> (4) directed the Plaintiff to pay ICD for the Marshal's fee within five days of this Court's order; and
>
> (5) directed the Clerk of the Court to remit to the Marshal the fee held in the Court account in the sum of $30,675.18 within five days of the date of this Court's Order.

(Dkt. No. 117.)

On November 19, 2012, the Plaintiff filed an order to show cause for renewal, reargument and reconsideration under Fed. R. Civ. P. 60(b) and for stay pending a determination. (Dkt. Nos. 118, 118-1.)  On November 26, 2012, this Court granted the order to show cause and ordered the parties to appear on December 3, 2012.  On November 30, 2012, ICD filed its opposition to the Plaintiff's motion.

At the December 3, 2012 hearing, the Court denied the Plaintiff's motion with respect to that portion of its ruling which directed the Plaintiff to file an appropriate satisfaction of the judgment.  The satisfaction could state the right of the Plaintiff to appeal from the post-judgment interest rate and payment of the Marshal's fee by the Plaintiff.  However, the Court reserved

decision on the Plaintiff's motion for reconsideration with respect to that portion which pertained to the Marshal's fee.

## II.  DISCUSSION

### A.  Legal Standard

A motion for reconsideration in the Eastern District of New York is governed by Local Rule 6.3.  "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).  "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted).

Of importance, a motion for reconsideration is not an opportunity for litigants to reargue their previous positions or present new or alternative theories that they failed to set forth in connection with the underlying motion.  See Trans—Pro Logistic Inc. v. Coby Elecs. Corp., No. 05 Civ. 1759, 2010 U.S. Dist. LEXIS 109902, 2010 WL 4065603, at *1 (E.D.N.Y. Oct. 15, 2010) (citing Ferrand v. Credit Lyonnais, 292 F. Supp. 2d 518, 520 (S.D.N.Y. 2003)); see also Zdanok v. Glidden Co., Durkee Famous Foods Div., 327 F.2d 944, 953 (2d Cir. 1964) ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.")  Indeed, a motion for reconsideration should be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have already been considered fully by the court" and is considered an "extraordinary remedy to be

employed sparingly in the interests of finality and conservation of scarce judicial resources."

Trans—Pro Logistic Inc., 2010 U.S. Dist. LEXIS 109902, 2010 WL 4065603 at *1 (internal

quotation marks omitted).  Ultimately, the decision as to whether to grant a motion for

reconsideration rests within the sound discretion of the district court.  Kapsis v. Bloom, No. 08

Civ. 3092, 2009 U.S. Dist. LEXIS 13367, 2009 WL 414001, at *1 (E.D.N.Y. Feb. 17, 2009).

In this case, the Plaintiff appears to rely on Fed. R. Civ. P. 60(b) to seek his request for

reconsideration.  Fed. R. Civ. P. 60(b) provides that "[o]n motion and upon such terms as are

just, the court may relieve a party or a party's legal  representative from final judgment, order, or

proceeding."  Rule 60(b) provides the following grounds for relief from a judgment:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
> (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b).  See Jones v. UNUM Life Ins. Co. of America, 223 F.3d 130, 136 (2d Cir.

2000).

Relief under Rule 60(b) is "invoked only upon a showing of exceptional circumstances."

Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986).  "To grant a Rule 60(b) motion, the court

must find that the evidence in support of the motion is highly convincing, that the movant has

shown good cause for the failure to act sooner, and that no undue hardship is imposed on the

other parties as a result." <u>Figueroa v. Walsh</u>, No. 00-CV-1160, 2008 U.S. Dist. LEXIS 35845,

2008 WL 1945350, *4 (E.D.N.Y. May 1, 2008) (citing <u>Kotlicky v. U.S. Fidelity & Guar. Co.</u>,

817 F.2d 6, 9 (2d Cir. 1987)).  As with motions for reconsideration, the determination of a Rule

60(b) motion is left to "the sound discretion of the district judge."  <u>Wang v. State Univ. of New</u>

<u>York Health Sciences Ctr. at Stony Brook</u>, No. 02-CV-584, 2008 U.S. Dist. LEXIS 73289, 2008

WL 4415266, *2 (E.D.N.Y. Sept. 24, 2008).

**B.  As to the Plaintiff's Motion to Reconsider the Court's November 2, 2012 Decision**
**Directing the Plaintiff to Pay for the Marshal's Fee**

       The Plaintiff argues that this Court should grant his motion to reconsider its decision

directing the Plaintiff to pay for the Marshal's fee because said decision was allegedly based

upon a mistake of fact and law in that (1) this Court mistakenly believed that the Plaintiff filed a

judgment on June 7, 2012, when he did not; (2) this Court mistakenly believed that the Plaintiff's

service of the property execution upon the New York City Marshal on June 7, 2012, containing

the state rate of post-judgment interest, the same day this Court issued its June 7, 2012 was

anything less than coincidence; (3) this Court mistakenly believed that the transcript of judgment

filed with the Suffolk County Clerk's office on November 1, 2010 had any interest rate set forth

therein; (4) this Court misapplied the decisions in <u>Randock Construction Services, Inc. v.</u>

<u>Kaatsbaan Int'l Dance Centr, Inc.</u>, 54 A.D.3d 924, 864 N.Y.S.2d 127 (2d Dept. 2008), <u>aff'd by</u>

13 N.Y.3d 580 (2009) and <u>Tiffany v. Saint John</u>, 65 N.Y. 314 (1875); and (5) this Court

incorrectly determined that it had jurisdiction or the authority to dictate the applicable post-

judgment interest rate.  (<u>See</u> Dkt. No. 118-1, pg. 17-18.)  However, the Court finds that the

Plaintiff has failed to show that he is entitled to reconsideration.

       As an initial matter, to the extent that this Court's November 2, 2012 decision may have

suggested that the Plaintiff or his counsel first received this Court's June 7, 2012 order and then

issued the property execution with the state rate post-judgment interest, the Court wishes to provide clarification.  The Court accepts the statements by the Plaintiff's counsel that she issued the property execution to the Marshal approximately two hours before this Court's June 7, 2012 was received.  Thus, any language in the November 2, 2012 decision which would imply that the Plaintiff or his counsel knowingly violated the June 7, 2012 decision as to the proper federal post-judgment rate or issued the property execution containing the state post-judgment interest rate despite the Court's decision to the contrary, should be disregarded.

Nevertheless, the Court does not find this clarification a sufficient ground for granting the Plaintiff's motion for reconsideration, as this fact does not change the Court's ultimate decision that the Plaintiff should pay the Marshal's fee.  See In re Worldcom, Inc. Sec. Litig., 308 F. Supp.2d 214, 224 (S.D.N.Y.2004)  ("A motion for reconsideration should be granted only where the moving party demonstrates that the Court has overlooked factual matters or controlling precedent that were presented to it on the underlying motion and that would have changed its decision."); see also In Re BDC 56 LLC, 330 F.3d 111, 123 (2d Cir. 2003).  Indeed, the Court in rendering its November 2, 2012 decision acknowledged that the Plaintiff may have issued the property execution "just prior to the Court's ruling on the post-judgment interest . . . apparently to execute at the state rate."  (Dkt. No. 117, pg. 22.)

Moreover, the fact that the Court now clarifies that the Plaintiff issued the property execution before receiving the June 7, 2012 order does not alter the following key facts, which serve as the basis for the Court's November 2, 2012 decision.

>(1) When the Plaintiff issued the property execution, the judgment and interest were fully bonded and payment was thus secure.
>(2) At the time the Plaintiff issued the property execution containing the state post-judgment interest rate, a number of motions were pending before this Court concerning whether

the state rate or the federal rate was the appropriate post-judgment interest rate to apply in this case.

(3) The evidence shows that the Plaintiff's counsel did not make a formal demand upon the bonding company.  Further, when the Plaintiff's counsel contacted the bonding company by letter on March 15, 2012, she referenced the New York State post-judgment interest rate although she knew that the post-judgment interest rate issue was still pending before this Court.

(4) On March 7, 2012, ICD made an unconditional tender of the full judgment and interest at the federal interest rate to the Plaintiff:  "Accordingly, ICD hereby tenders to Capiello [sic], and stands ready, willing and able to pay, in satisfaction of this Court's judgment and all other outstanding amounts, the full judgment amount, plus post judgment interest and costs, all of which total $612,587.66 as of March 5, 2012.  Since post judgment interest is accumulating at the rate of $4.18 per day, ICD further tenders the accumulated interest for the two days since March 5, 2012, which comes to $8.36, and which brings the grand total to $612,596.02.  In the alternative, ICD tenders such amount for payment into the registry of the Court for Capiello's [sic] benefit, as this Court may so order, for purposes of satisfying the judgment, interest and costs.  All funds will be paid from the Chase account currently used as collateral for the Letter of Credit securing the supersedeas bond."  (Dkt. No. 88, ¶ 7.)

(5) In addition, on five other occasions, ICD made tenders of judgment.  As such, the evidence shows that since February 2012, ICD proactively sought to fully satisfy the judgment.  However, the Plaintiff rejected ICD's tenders of judgment, insisting he is entitled to post-judgment interest at the state rate, not the federal rate.  (See Dkt. Nos. 88, Exh. C; 91, ¶ 6; 94, ¶ 11; 98-10; 98-13.)

(6) The property execution served upon Chase was invalid because it stated an amount owing that included the state rate of interest, contrary to the decision eventually reached by this Court.

As these facts demonstrate, and as this Court articulated in its previous November 12, 2012 decision, the Plaintiff's counsel acted in a way that was "overly aggressive and unnecessary" in light of the fact that (1) ICD had demonstrated its willingness and ability to pay the judgment and (2) the Court was still considering the post-judgment interest rate issue at the time the Plaintiff issued the property execution.  In other words, despite knowing that the post-

judgment interest rate issue was still pending before this Court and despite knowing that the defendant had the judgment fully bonded, the Plaintiff nevertheless issued a property execution to the New York City Marshal containing the claimed post-judgment interest rate at the 9% New York State rate.  Whether the Plaintiff or his counsel's actions were due to a mistaken belief on their part or overly aggressive conduct is irrelevant, because regardless, it was clear that it is the Plaintiff who unnecessarily and unreasonably employed the assistance of the Marshal.  <u>See Rondack</u>, 54 A.D. 3d at 926, 864 N.Y.S. 2d at 129 ("When the judgment debtor tenders the amount necessary to satisfy the judgment, the execution lien is discharged.").  Indeed, rather than wait for this Court's order on the issue of the post-judgment issue rate, the Plaintiff pressed onward and issued a property execution that ultimately ended up being invalid because it did not comport with the Court's June 7, 2012 ruling.  Therefore, the Plaintiff should be responsible for the consequences of his costly actions, not the Defendant.

Accordingly, based on the foregoing, the Plaintiff's motion for renewal, reargument and reconsideration of the November 2, 2012 decision is denied.

### III. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED** that the Plaintiff's motion for renewal, reargument and reconsideration is denied; and it is further

**ORDERED** that the Plaintiff pay the Marshal's fee as directed by this Court's November 2, 2012 Decision within five (5) days of the date of this Order; and it is further

**ORDERED** that, if he has not done so already, the Plaintiff serve and file a satisfaction of judgment in compliance with this Court's November 2, 2012 decision within five days of the date of this order.

13

**SO ORDERED.**
Dated: Central Islip, New York
December 6, 2012


_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge